The plaintiff is a duly licensed employment agency under § 31-130 of the General Statutes. The defendant is a Connecticut corporation whose principal business is operating retail stores. On or about March 21, 1972, Richard Raphael, president of the defendant, contacted the plaintiff with a request to obtain a person to act as merchandise manager. Marvin Beloff on January 12, 1972, had filed an application with the plaintiff for merchandising work and did not indicate that there were any restrictions on whom the plaintiff should contact about prospective employment. Raphael also did not indicate that there were any restrictions on whom the plaintiff was to contact.
On March 28, 1972, the plaintiff called Raphael and told him about two people in its files who might *Page 80 
have the qualifications for the job, one of whom was Beloff. Raphael said that he knew Beloff and that it would not be necessary to send Beloff's resume. The plaintiff also contacted Beloff about the opening at the defendant's store. On May 4, 1972, the defendant sent the plaintiff a letter stating that the position was filled, but the defendant did not indicate who had been hired. On June 21, 1972, there appeared a news item in Women's Wear Daily indicating that Beloff was now employed by the defendant as a merchandising manager. Subsequently the plaintiff billed the defendant for services.
The defendant claims that the plaintiff contacted Beloff about the Raphael job about April 1, 1972, but that Beloff was not interested. The defendant claims that although the plaintiff had mentioned Beloff to it, the plaintiff did nothing to bring the parties together.
It was stipulated by the parties that the plaintiff is a duly licensed employment agency under General Statutes § 31-130; that a fee schedule had been filed and approved with the state labor department authorizing a 15 percent fee by the plaintiff; that Beloff's salary at which he was hired was $20,800 per year; and that Beloff worked in excess of ten weeks for the defendant in accordance with § 31-131
of the General Statutes.
The real issue in this case is whether the plaintiff was the procuring cause of Beloff's employment by the defendant. There are no reported cases on that aspect of the employment agency business. The situation is, however, somewhat analogous to that of real estate broker cases which have held: "A broker earns his commission in a real estate transaction when he procures a customer who is ready, willing and able to purchase upon terms prescribed or *Page 81 
accepted by the seller. . . . Whether a broker's efforts are the procuring cause of a sale is an issue of fact for the trier, and its conclusion will stand unless it is contrary to, or unsupported by, the subordinate facts, or is in conflict with logic and reason, or is found in violation of some rule of law."Richter v. Drenckhahn, 147 Conn. 496, 500.
The initial contact between Beloff and the defendant was instituted by the plaintiff. It is true that the plaintiff took no part in subsequent negotiations between the defendant and Beloff, but, because of the close friendship between Beloff and Raphael any further action by the plaintiff was discouraged. The defendant knew that the plaintiff was an employment agency and would expect a commission if one of its clients were employed by the defendant. Raphael also admitted that he first learned of Beloff's availability for employment through the plaintiff. Had it not been for the plaintiff's efforts, Beloff would probably not have been employed by the defendant. Under the facts of this case, the court finds that the plaintiff was the procuring or the effective cause of Beloff's employment by the defendant. Williams v. Walker, 95 N.H. 231.
 Judgment may enter for the plaintiff against the defendant for $3040 plus costs.