HILES COMPANY, HARLAN HILES AND ROGER HINES, DBA HILES COMPANY, APPELLANTS, *v.* JOHNSTON PUMP COMPANY OF PASADENA, CALIFORNIA, ARM-STRONG BROS., AND MENTZER DETROIT DIESEL, RESPONDENTS.

No. 8142

February 16, 1977                    560 P.2d 154

*Breen, Young, Whitehead & Hoy,* and *Milos Terzich,* Reno, for Appellants.

*Julian C. Smith,* Carson City, *Hibbs & Newton,* Reno, and *Cunningham & Williams,* Reno, for Respondents.

**OPINION**

By the Court, BATJER, C. J.:

Appellants sought to recover damages for economic losses allegedly caused by deficient equipment leased by respondent Mentzer Detroit Diesel (Mentzer) and a defective product manufactured by respondent Johnston Pump Company (Johnston) and sold by respondent Armstrong Brothers (Armstrong). Here, appellants contend the trial court erroneously granted respondents' motion for summary judgment. We agree and remand the action for trial.

Appellants Harlan Hiles and Roger Hines formed a partnership to raise crops utilizing an irrigation system. To this end, Hiles entered into an agreement with Mentzer to lease, with an option to purchase, a diesel engine to power the pump used in the irrigation system. Further, Hiles hired Armstrong, a dealer for Johnston, to rebowl this pump. On June 1, 1968, Armstrong installed new bowls manufactured by Johnston, but the pump failed to operate properly. The cause of the malfunction was later attributed to missing parts in the bowls.

Due to this defect in the bowls and the alleged failure by Mentzer to supply a proper engine to operate the pump, Hiles, in his name only, filed suit against respondents to recover economic losses on the theories of negligence and breach of warranties. At trial, it became apparent that damages, if any, would be owing to the partnership. However, the trial court, without stating its reasons, denied Hiles' motion to join the indispensable parties, and respondents objected to the admission of all evidence relating to partnership damages.[1] Faced with these adversities, Hiles stipulated with respondents to dismiss the action without prejudice, and, on April 25, 1974, the trial court entered its order of dismissal.

---

[1] No appeal was taken from the trial court's refusal to allow the addition of indispensable party plaintiffs, and we express no opinion on that question.

On June 3, 1974, Hiles Company, Harlan Hiles, and Roger Hines filed suit alleging the identical causes of action previously asserted by Hiles. Johnston moved for summary judgment relying on the affirmative defenses alleged in its answer that the statute of limitations set forth in NRS 104.2725 precluded the action and no privity of contract existed.[2] Mentzer and Armstrong orally joined in the motion which the trial court granted after finding no material issue of fact remained. By granting the motion, appellants contend the trial court erred because (1) NRS 104.2725 does not bar the action, and (2) lack of privity of contract does not preclude appellants' action against Johnston.

1.  NRS 104.2725 requires that any action for breach of a contract for sale must be commenced within four years after the cause of action accrues. Here, Hiles filed the original suit within this time period, but the second action was not commenced within four years. Thus, the second action must fail unless it falls within the saving clause of the statute which provides: "Where an action commenced within the time limited by subsection 1 is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute."

Although appellants commenced the second suit within six

---

[2]NRS 104.2725 provides: "1. An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.

"2.  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

"3.  Where an action commenced within the time limited by subsection 1 is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

"4.  This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective."

months of the dismissal of Hiles' action, respondents argue the saving clause is inapplicable because the original action was "voluntarily discontinued." To support this argument, respondents rely on the stipulation in which the parties agreed that the original action be dismissed without prejudice. However, this stipulation was anything but voluntary. The pressure on Hiles was significant; he faced a dismissal with prejudice or an adverse judgment because Hines and the partnership had not been joined. After the trial court denied Hiles' motion to join the indispensable parties, the stipulated dismissal without prejudice with an opportunity to refile naming the proper parties was the only avenue by which appellants could have the matter considered on its merits.

The plea of statute of limitations ". . . is not such a meritorious defense that either the law or the fact should be strained in aid of it, nor should this court indulge in any presumptions in its favor." Howard v. Waale-C. & Tiberti, 67 Nev. 304, 312, 217 P.2d 872, 876 (1950). We decline to equate "voluntary discontinuance" to the situation where, in order to maintain a suit, one is forced to dismiss his action so that another can be filed naming indispensable party plaintiffs. Cf. D. & J. Leasing, Inc. v. Hercules Galion Products, Inc., 429 S.W.2d 854 (Ky. 1968).

Respondents also assert the saving provision of NRS 104.-2725 does not apply where, as here, indispensable party plaintiffs are added in the second action. The statute is silent in this regard. It only requires the first action to be so terminated ". . . as to leave available a remedy by another action for the same breach. . . ." Here, such a remedy is available.

Although NRS 104.2725 saves appellants' action against all respondents, Mentzer nevertheless contends the sales provisions of the uniform commercial code, including NRS 104.2725, should not apply to it because it merely leased equipment to appellants. Under appropriate circumstances, the code's provisions can extend to lease transactions. See, e.g., All-States Leasing Company v. Bass, 538 P.2d 1177 (Idaho 1975); Owens v. Patent Scaffolding-Div. of Harsco, 354 N.Y.S.2d 778 (Sup.Ct. 1974); Baker v. City of Seattle, 484 P.2d 405 (Wash. 1971). However, whether the Mentzer lease falls within the purview of the uniform commercial code presents a

genuine issue of material fact thereby precluding summary judgment on the matter. NRCP 56; Stern v. Jacobson, 90 Nev. 113, 520 P.2d 614 (1974).

2. Respondent Johnston further contends appellants have no recourse against it for economic losses caused by breach of warranties because appellants lack vertical privity of contract with Johnston.[3] Our uniform commercial code, specifically NRS 104.2318, is neutral on the requirement of vertical privity.[4] See: Nordstrom, Sales § 91 at 284 (1970). While Johnston relies on Amundsen v. Ohio Brass Co., 89 Nev. 378, 513 P.2d 1234 (1973), and Long v. Flanigan Warehouse Co., 79 Nev. 241, 382 P.2d 399 (1963), to support its contention, those cases dealt with horizontal, not vertical, privity and are therefore distinguishable.[5]

It is well established that vertical privity is not required in actions for personal or property injury caused by defective products. See: 3 Williston on Sales §§ 22–5 to 22–8 (1974); White & Summers, Uniform Commercial Code §§ 11–1 to 11–5 (1972); Nordstrom, Sales § 91 (1970); Annot., 16 A.L.R.3d 683 (1967). However, there is a split of authority concerning the need of privity in actions for the recovery of economic loss. Jurisdictions which require privity express the fear that to hold otherwise might expose manufacturers to

[3]Respondents Armstrong and Mentzer concede that, as to them, privity exists, and, thus, they do not join in Johnston's contention.

[4]NRS 104.2318 provides: "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

[5]"The difference between these two types of problems can be described in this way: a manufacturer sells his goods to a wholesaler who sells them to a retailer; the retailer sells those goods to a consumer who uses them or gives them to some third party who uses them. As goods are moving 'down' the distributive chain from manufacturer to consumer, the contractual relationships (or sales) are 'vertical.' When they are placed in the hands of the ultimate purchaser, they have left the commercial distributive chain and the connection between the ultimate purchaser and the person who was injured by their use can be described as 'horizontal.' For horizontal privity the injured party is trying to place himself in the position of the buyer and take advantage of warranties made to the buyer; for vertical privity the buyer (or the one in his place) is attempting to take advantage of warranties made by those who did not 'sell' to the buyer." Nordstrom, Sales § 91 at 282–83 (1970).

unforeseeable losses suffered by remote buyers. However, warranty recovery is limited to the reasonable damages contemplated by the parties and proximately caused by the breach. See: NRS 104.2715.

We perceive no reason to distinguish between recovery for personal and property injury, on the one hand, and economic loss on the other. Cf. Santor v. A & M Karagheusian, Inc., 207 A.2d 305 (N.J. 1965); Randy Knitwear, Inc. v. American Cyanamid Company, 181 N.E.2d 399 (N.Y. 1962). Instead, we believe that lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties. See: Cova v. Harley Davidson Motor Company, 182 N.W.2d 800 (Mich.App. 1970); Kassab v. Central Soya, 246 A.2d 848 (Pa. 1968); Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D. 1965); Spence v. Three Rivers Builders & Masonry Supply, 90 N.W.2d 873 (Mich. 1958); Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953); see also, Schwartz, The Demise of Vertical Privity: Economic Loss under the Uniform Commercial Code, 2 Hofstra L.Rev. 749 (1974); Zammit, Manufacturers' Responsibility for Economic Loss Damages in Products Liability Cases, 20 N.Y.L.F. 81 (1974).

The order granting summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

ZENOFF, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.