633 P.2d 383

**Paul M. FLORY and Vera Flory, husband and wife, Appellees/Cross Appellants,**

v.

**SILVERCREST INDUSTRIES, INC., a corporation; and Pacific Employers Insurance Company, a foreign corporation, Appellants/Cross Appellees,**

and

**Char-Nanza, Inc., dba Alamo Mobile Homes, Appellant/Cross Appellee.**

**No. 15040–PR.**

Supreme Court of Arizona, In Banc.

July 13, 1981.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellees/cross appellants Paul M. and Vera Flory.

Rosen & Schneider, Ltd. by Barry C. Schneider, Phoenix, for appellants/cross appellees Silvercrest and Pacific Emp. Ins.

Robbins & Green, P.A. by Edmund F. Richardson and Gary E. Donahoe, Phoenix, for appellant/cross appellee Char-Nanza, Inc., dba Alamo Mobile Homes.

GORDON, Justice:

Appellees Paul and Vera Flory, plaintiffs below, brought this action seeking damages allegedly suffered during the purchase of a new mobile home, using as theories of recovery breach of contract and breach of warranty, intentional infliction of emotional stress, and fraud. Appellants, defendants below, are the mobile home manufacturer, Silvercrest Industries, Inc. (Silvercrest), its bonding company, Pacific Employers Insurance Company (Pacific), and the retailer, Char-Nanza, Inc., dba Alamo Mobile Homes (Alamo).

During a jury trial, the court granted directed verdicts in favor of both Silvercrest and Alamo on Count II (intentional infliction of emotional stress) and in favor of Silvercrest on Count III (fraud). The jury returned verdicts totalling $65,000 compensatory damages and $5,000 punitive damages against the defendants, which the judge subsequently remitted in lieu of granting defendants a new trial. Plaintiff consented to the remittitur, and judgment was ultimately entered against all defendants jointly for $21,500 compensatory damages, $9,750 in attorneys' fees, and $497.33 in costs, and against Alamo individually for $5,000 in punitive damages. Defendants appealed from the judgment. Plaintiffs cross-appealed as to the directed verdicts and the denial of their motion for a new trial.

The Court of Appeals, 633 P.2d 424, affirmed that part of the judgment based on the trial court's directed verdicts, reversed the order awarding attorneys' fees based on *Bouldin v. Turek*, 125 Ariz. 77, 607 P.2d 954 (1979), and affirmed the order conditionally granting a new trial on the issue of damages only. Deeming plaintiffs' consent to the remittitur to have been revoked by their cross-appeal, the Court of Appeals remanded the case for a new trial solely on the issue of damages.

We granted review to determine the following issues:

(1) whether privity of contract is required in order to recover economic losses under the theory of breach of warranty,

(2) whether the record contained sufficient evidence to find Alamo liable on the basis of fraud, and

(3) whether plaintiffs' acceptance of the remittitur was automatically revoked by their cross-appeal.

We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S. We approve those portions of the Court of Appeals' opinion which uphold the directed verdicts for Silvercrest and Alamo on Count II and for Silvercrest on Count III and which reverse the award of attorneys' fees. We vacate the remainder of the opinion of the Court of Appeals. Those portions of the trial court judgment assessing costs and damages against Silvercrest are reversed. The judgment against Alamo of $19,846 for breach of contract as well as the awards of $1,654 compensatory damages and $5,000 punitive damages for fraud are affirmed. The case is remanded for a new trial on all the issues raised in Count I of Florys' amended complaint against Silvercrest and Pacific.

FACTS

On August 6, 1972, plaintiffs Florys entered into a sales contract with Alamo to purchase a mobile home manufactured by Silvercrest for a little over $17,000. At that time, Florys were seventy-seven year old

retired college professors living in a custom home in Upland, California. They planned to set up the mobile home on a lot in Payson, Arizona, and to live in it as their retirement home.

After having become interested in the particular model of Silvercrest coach which they later purchased upon inspecting one at a Glendale, Arizona, mobile home lot, Florys went to Alamo's lot in Ontario, California, in an attempt to get a better price on that model. According to the record, Florys indicated to Alamo that they wanted the wall-to-wall carpeting normally installed to be omitted and linoleum used in its place. Alamo called the factory sales representative in this regard, who suggested that tile be put down rather than linoleum, because of the problem which would be caused by the middle seam between the two halves of the mobile home. Alamo relayed this suggestion to Florys and took them to a floor covering store where Florys selected the tile they wanted. The factory put no covering on the floor where Florys wanted the carpeting omitted.

At the time of the sale, Alamo made certain representations to Florys, among them that a one-year warranty came with the mobile home, that Coleman heaters were installed in Silvercrest mobile homes at that time, that the mobile home was specially built, that it would be built to meet the Arizona Code, and that they would be allowed to inspect it at the factory. The record indicates that the one-year warranty was not given to Florys when the mobile home was delivered, that the home was equipped with an Armstrong heater rather than a Coleman heater, that it was built as part of an assembly-line process, that it had several problems which were defined as Arizona Code defects, and that Florys were not afforded an opportunity to inspect the mobile home at the factory.

Florys testified that they paid $2,000 down at the time they signed the contract of sale and $7,818 before the coach was transported to Arizona. Their contract indicates that they agreed to pay the balance upon delivery of the coach to their lot in Payson, Arizona. The mobile home was delivered to Florys' lot on November 21, 1973, and was later set up by an independent contractor hired by Alamo. On December 5, 1973, Florys sent a list of defects in the mobile home to both Alamo and Silvercrest. On January 2, 1974, they sent another list, which the factory hired Alamo's setup man to remedy. On January 23, 1974, Florys sent yet another list of defects. After the independent contractor hired to do the setup and warranty work left a note on February 2, 1974, saying he had done all he could do, Florys sent another list of defects to Alamo, filed a complaint with the Arizona Division of Building Codes and refused to move into the home or pay the balance of the purchase price due. More attempts to remedy Florys' complaints by Silvercrest, the manufacturer, followed, yet the mobile home was never fixed to Florys' satisfaction. The tile which they had purchased to cover the floor was never installed because the floor was not prepared to accept the tile, which Florys felt was the manufacturer's responsibility. Florys never moved into the mobile home. They filed their complaint in this action on January 21, 1975. Alamo repossessed the mobile home in November 1977, and on December 21, 1977, sold it.

## RECOVERY OF ECONOMIC LOSS WITHOUT PRIVITY OF CONTRACT

The amended judgment from which defendants appealed included damages assessed against Silvercrest for plaintiffs' economic losses based on breach of Uniform Commercial Code warranties. Silvercrest and Pacific contended in their motion for rehearing that the Court of Appeals erred in allowing such a judgment to stand without privity of contract between plaintiffs and Silvercrest. We agree and remand for a new trial on both liability and damages as to Silvercrest under Count I.

While plaintiffs complaint sought recovery from Silvercrest and other defendants under both breach of contract and breach of warranty theories, no form of verdict on

breach of contract was submitted to the jury as to Silvercrest. The only warranties on which the trial court instructed the jury were warranties included in the Arizona Uniform Commercial Code, specifically A.R.S. § 44–2330 (U.C.C. § 2–313) and A.R.S. § 44–2331(A) and (B)(1), (3) and (6) U.C.C. § 2–314(1) and (2)(a), (c) and (f)) as set out in the footnote below.[1]

■ As to these warranties, we hold that lack of privity does preclude recovery. Both A.R.S. § 44–2330 and A.R.S. § 44–2331 describe warranties which apply to contracts of sale. We find nothing in the language of those statutes nor in the Official Comments to the U.C.C. which persuades us that the warranties provided by §§ 44–2330 and 44–2331 were intended to apply outside the context of sales contracts.

This result is in harmony with *Eck v. Helene Curtis Industries Inc.*, 9 Ariz.App. 426, 453 P.2d 366 (1969) and *Bailey v. Montgomery Ward & Co.*, 6 Ariz.App. 213, 431 P.2d 108 (1967). *Bailey* held that an injured plaintiff could not recover under implied warranties of quality provided by former A.R.S. § 44–215 of the Uniform Sales Act because no privity existed between the plaintiff and the defendant manufacturer. *Eck* held that the theories of implied warranty of merchantability and implied warranty of fitness were not available to the injured plaintiff in that case because "the privity requirement as to both theories applies in Arizona." 9 Ariz.App. at 429, 453 P.2d at 369.

The requirement of privity of contract to recover for breach of implied and express warranties under the Arizona Uniform Commercial Code has been dropped to some extent by A.R.S. § 44–2335 (U.C.C. § 2–318, Alternative A), which eliminates the requirement of privity as to certain personally injured plaintiffs. A.R.S. § 44–2335 provides:

"§ 44–2335. Third party beneficiaries of warranties express or implied

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

The above section eliminates the necessity of horizontal privity as to certain personally injured plaintiffs, but not the necessity of vertical privity, or privity in the chain of distribution. The seller's warranties to which it refers are in this case the warranties made by Alamo to Florys in connection with their sales contract. Alamo's warranties are extended by this section to personally injured family members and household

---

1. "§ 44–2330. Express warranties by affirmation, promise, description, * * *

"A. Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

* * * * * *

"B. It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to made a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

"§ 44–2331. Implied warranty: merchantability;

* * * * * *

"A. Unless excluded or modified * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *.

"B. Goods to be merchantable must be at least such as:

"1. Pass without objection in the trade under the contract description; and

* * * * * *

"3. Are fit for the ordinary purposes for which such goods are used; and

* * * * * *

"6. Conform to the promises or affirmations of fact made on the container or label if any."

members and guests. A.R.S. § 44–2335 does not create warranties on the part of Silvercrest or other remote manufacturers. Thus Florys' claim against Silvercrest for damages based on breach of warranty under the Uniform Commercial Code must fail due to lack of privity.

In Arizona we have recognized that an action styled as "breach of implied warranty" to recover damages for physical injury to person or property is in essence an action based on strict liability in tort, *Scheller v. Wilson Certified Foods, Inc.*, 114 Ariz. 159, 559 P.2d 1074 (App.1976); *Wetzel v. Commercial Chair Co.*, 18 Ariz.App. 54, 500 P.2d 314 (1972), based on the principles of Restatement (Second) of Torts § 402(A) (1965), *see Tucson Industries, Inc. v. Schwartz*, 108 Ariz. 464, 501 P.2d 936 (1972); *O. S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). It is important to note that what we have said herein regarding the requirement of privity to recover for breach of warranty under the Uniform Commercial Code is limited to those actions. No privity of contract is needed to recover for physical injuries under the theory of strict liability in tort. *Wetzel, supra.*

Our requirement of privity to recover for breach of implied warranty under our Code effectively denies recovery of plaintiffs' purely economic losses on the record before us, however, as such losses are not recoverable under the doctrine of strict liability. *Beauchamp v. Wilson*, 21 Ariz.App. 14, 515 P.2d 41 (1973); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976); *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). Although we allow recovery for "breach of implied warranty" without privity under the theory of strict liability, plaintiffs cannot recover purely economic damages under that theory. And although we allow recovery for purely economic damages for breach of U.C.C. warranties, plaintiffs cannot recover under that theory from Silvercrest due to their lack of privity with that defendant.

There has been disagreement among courts in other jurisdictions as to the propriety of awarding economic damages under the theory of implied warranty to plaintiffs who are not in privity with defendant manufacturers. Some courts require privity before awarding such damages. See *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377 (1975); *Ellis v. Rich's, Inc.*, 233 Ga. 573, 212 S.E.2d 373 (1975); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975); *Richards v. Goerg Boat & Motors, Inc.*, Ind. App., 384 N.E.2d 1084 (1979); *Service Iron Foundry, Inc. v. M. A. Bell Co.*, 2 Kan. App.2d 662, 588 P.2d 463 (1978); *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 374 N.E.2d 97, 403 N.Y.S.2d 185 (1978); *Davis v. Homasote Co.*, 281 Or. 383, 574 P.2d 1116 (1978); *State ex rel. Western Seed Prod. Corp. v. Campbell*, 250 Or. 262, 442 P.2d 215 (1968), *cert. denied*, 393 U.S. 1093, 89 S.Ct. 862, 21 L.Ed.2d 784 (1969); J. White and R. Summers, Uniform Commercial Code § 11–5 (1972) and cases cited therein.

Others do not. *See Morrow, supra; Whitaker v. Farmhand, Inc.* 173 Mont. 345, 567 P.2d 916 (1977); *Hiles Co. v. Johnston Pump Co.*, 93 Nev. 73, 560 P.2d 154 (1977); *Santor v. A. and M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965); *Old Albany Estates v. Highland Carpet Mills, Inc.*, 604 P.2d 849 (Okla.1979); *Gasque v. Eagle Machine Co.*, 270 S.C. 499, 243 S.E.2d 831 (1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977); *Western Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806 (Wyo.1980).

We agree with the cases cited above which hold that economic losses are not recoverable for breach of implied warranty in the absence of privity of contract. Our conclusion is based primarily on the Arizona U.C.C. provisions covering implied warranties which, as interpreted above, provide no support for such a recovery, and on the language of the Restatement (Second) on Torts § 402(A), which limits recovery to physical injuries to persons or property. We are persuaded that this is the fair and correct result by the reasoning of the Oregon Supreme Court in *Campbell, supra.*

"The risk that a product may not perform as it should exists in every purchase

transaction. A buyer who chooses his seller with care has an adequate remedy should any warranties be breached. A buyer whose seller proves to be irresponsible will understandably seek relief further afield. But to allow a nonprivity warranty action to vindicate every disappointed consumer would unduly complicate the code's scheme, which recognizes the consensual elements of commerce. Disclaimers and limitations of certain warranties and remedies are matters for bargaining. Strict-liability actions between buyers and remote sellers could lend themselves to the proliferation of unprovable claims by disappointed bargain hunters, with little discernible social benefit. Because the buyer and his seller will normally have engaged in at least one direct transaction, litigation between these parties should ordinarily be simpler and less costly than litigation between buyer and remote seller. For these reasons we retain the rule stated in *Price v. Gatlin*, [241 Or. 315, 405 P.2d 502 (1965)]: Where the purchaser of an unmerchantable product suffers only loss of profits, his remedy for the breach of warranty is against his immediate seller unless he can predicate liability upon some fault on the part of a remote seller." 250 Or. at 267–68, 442 P.2d at 217–18.

Further, as *White & Summers, supra*, points out, "by forcing the buyer to bear such losses we may save costly law suits and even some economic losses against which buyers, knowing they have the responsibility, may protect themselves. In short, we believe that a buyer should pick his seller with care and recover any economic loss from that seller and not from parties remote from the transaction." *Id.* at 335.

While plaintiffs may not recover their economic losses from Silvercrest on either a breach of warranty theory under the Arizona Uniform Commercial Code or the strict liability theory of "breach of implied war-

ranty," they may be able to recover damages on retrial by proving facts to support recovery under other theories alleged in Count I of their amended complaint.[2]

For example, several jurisdictions have allowed recovery against manufacturers for economic losses caused by the breach of an express warranty outside the Uniform Commercial Code. No privity of contract was required for recovery based on these non-U.C.C. express warranties. *See B.B.P. Ass'n, Inc. v. Cessna Aircraft Co.*, 91 Idaho 259, 420 P.2d 134 (1966); *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); *Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 259 S.E.2d 552 (1979); *Inglis v. American Motors Corp.*, 3 Ohio St.2d 132, 209 N.E.2d 583 (1965). Our cases would not preclude finding Silvercrest liable on a non-U.C.C. express warranty made by them to Florys should sufficient facts be established on retrial to support such a theory.

The following manufacturer's warranty which Florys received from Silvercrest might be one basis on which to find Silvercrest liable on such a theory of breach of warranty:

"MANUFACTURER'S WARRANTY

"SILVERCREST INDUSTRIES, INC. is the Manufacturer of your New Mobile Home. This is your WARRANTY of materials and workmanship. In addition to the Manufacturer, your SILVERCREST Dealer that sold your NEW Mobile Home and you as its owner also have certain responsibilities to be fulfilled.

\*    \*    \*    \*    \*    \*

"THE COMPONENT PARTS IN YOUR NEW MOBILE HOME ARE WARRANTED FOR twelve (12) months after delivery to you or twenty-four (24) months from date of manufacture (whichever is less) to be free from defects in material and workmanship. \* \* \*

---

2. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Supp. 1975 to 1980), does not apply to this case because the mobile home in question was manufactured before the effective date of that act. 15 U.S.C. § 2312 (1976).

"Should you be required to call upon SILVERCREST INDUSTRIES, INC. to honor its WARRANTY, the Manufacturer shall replace or repair any parts covered by this WARRANTY determined by the inspection of SILVERCREST INDUSTRIES, INC. to be defective, which parts are returned to SILVERCREST INDUSTRIES, INC.'S nearest factory, or when such is impracticable, the Manufacturer shall supply all materials necessary to replace or repair said defective part.

"TO BE VALID this WARRANTY CARD must be returned to SILVERCREST INDUSTRIES, INC. within thirty (30) days from delivery to the original purchaser or acknowledgement by him on any other documents containing this WARRANTY. * * *

"THIS WARRANTY IS LEGALLY BINDING ON SILVERCREST INDUSTRIES, INC. and is given in LIEU of all other Warranties (statutory, express or implied—whether of merchantability or fitness) * * *."

■ This written warranty made by Silvercrest to the "owner" of the mobile home does not qualify as an express warranty under A.R.S. § 44–2330 because it was not made to the buyers (Florys) by the seller (Alamo) as part of the basis of their bargain, nor was it part of the basis of the bargain of a sales contract between Silvercrest and Florys. Further, it might not constitute an express warranty outside the U.C.C. because the record indicates that it was not given to Florys until sometime after the sale and delivery of the mobile home. This language, however, might operate to create a contract of warranty between Silvercrest and Florys.

We held in *Savoca Masonry Co. v. Homes & Son. Constr. Co.*, 112 Ariz. 392, 542 P.2d 817 (1975), that the requirements of an enforceable contract are an offer, an acceptance, consideration and sufficient specification of terms so that the parties' obligations can be determined. On retrial it may be determined that Silvercrest made an offer to perform the terms of its "Manufacturer's Warranty," which Florys accepted, and that

sufficient specification of terms existed to determine the parties' obligations. Plaintiffs may be able to show consideration from the terms of the contract or by reliance on a presumption of consideration pursuant to A.R.S. § 44–121. If the "Manufacturer's Warranty" quoted above is an enforceable contract and if Silvercrest failed to perform according to its terms, Silvercrest would be liable to Florys for damages sustained as a result of such failure. *Graham v. Asbury*, 112 Ariz. 184, 540 P.2d 656 (1975). These are matters for consideration on retrial.

### FRAUD

In its motion for rehearing, Alamo contends (1) that there was insufficient evidence for the jury to have found the nine elements essential to prove common law fraud and (2) that it was error for the trial court to have instructed the jury on the Consumer Fraud Act, A.R.S. § 44–1521, *et seq.*

■ We feel that a review of the record reveals sufficient evidence for a jury to find the necessary elements of common law fraud. The form of jury verdict, to which Alamo made no objection, does not establish whether the verdict was based on common law fraud or the Consumer Fraud Act. Because we find the verdict justifiable on the basis of common law fraud, we feel it unnecessary to address the question whether the trial court's instructions on the Consumer Fraud Act were error.

### REVOCATION OF REMITTITUR

■ The Court of Appeals, deeming Florys' consent to the remittitur to have been revoked by their cross-appeal, remanded this case for a new trial solely on the issue of damages. Yet, as defendants point out, Florys' cross-appeal lacks any reference to the remittitur. Rule 8(c), 17A A.R.S. Rules of Civil Appellate Procedure provides:

"8(c) *Content of the Notice of Appeal*
The notice of appeal shall specify the party or parties taking the appeal, shall designate the judgment or part thereof

**582**

appealed from, and shall name the court to which the appeal is taken."

There being no mention of the remittitur in Florys' cross-appeal, it was not an issue properly raised in the Court of Appeals.

Florys argue that their cross-appeal automatically revoked their acceptance of the remittitur pursuant to the following Rule 59(i)(2), 16 A.R.S. Rules of Civil Procedure:

"If a statement of acceptance is filed by the party adversely affected by reduction or increase of damages, and the other party thereafter perfects an appeal, the party filing such statement may nevertheless cross-appeal and the perfecting of a cross-appeal shall be deemed to revoke the consent to the decrease or increase in damages."

■ The comments to Rule 59(i) explain that this provision was intended to reverse the holding of *State v. Tucson Title Ins. Co.*, 101 Ariz. 415, 420 P.2d 286 (1966), to the effect that a party awarded damages who accepted a remittitur in accordance with a trial court order was estopped to attack the remittitur on cross-appeal. Rule 59(i), State Bar Comm. Note 2, 16 A.R.S. Rules of Civil Procedure. We feel that Rule 59(i)(2) was intended to afford the adversely affected party an opportunity to challenge a remittitur or additur by cross-appeal, but not to require such a party to surrender rights obtained through acceptance of a remittitur or additur by mandating its automatic revocation on cross-appeal. *Waqui v. Tanner Bros. Contracting Co.*, 121 Ariz. 323, 589 P.2d 1355 (App.1979). Therefore, Florys' cross-appeal did not operate to automatically revoke their acceptance of the remittitur.

Accordingly, we affirm that part of the amended trial court judgment awarding Florys damages for breach of contract and fraud against Alamo. We reverse that part awarding damages against Silvercrest and Pacific and remand for a new trial as to Silvercrest's liability on Count I of plaintiff's amended complaint. The opinion of the Court of Appeals is approved in part and vacated in part.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.