GORDON, Vice Chief Justice:
Each of the several individually named plaintiffs purchased houses in the Indian Hills subdivision near Casa Grande, Arizona at varying times during 1975, 1976, and 1977. The houses had been built by defendant Powercraft Homes beginning in 1974. Plaintiffs Woodward, Fillion, Schaar, and Grant purchased their homes directly from Powercraft while plaintiffs Richards, Farina, and White bought repossessed homes from Farmers Home Administration. After occupying the houses, each plaintiff discovered numerous defects. The defects included, inter alia, faulty water pipes, improperly leveled yards that resulted in pooling and flooding with any rain, cracking of the interior and exterior walls, separation of the floors from the walls, separation of sidewalks, driveways, and carports from the houses, and doors and windows which were stuck closed or which could not be locked because of misalignment. Powercraft was notified of many of these defects and attempted some repairs. The repairs in most cases provided only temporary or partial relief from the problems.
In the spring of 1978, each of the plaintiffs filed a complaint with the Arizona Registrar of Contractors. The Registrar found that Powercraft had failed to follow certain plans and specifications in the building of each home and that it had failed to properly compact the soil beneath each house before building commenced. Power-craft’s contractor’s license was revoked on December 6, 1978.
Plaintiffs filed suit against Powercraft on August 17, 1979 alleging violation of the Consumer Fraud Act, A.R.S. § 44-1521 et seq., and breach of the implied warranty that houses be habitable and constructed in a workmanlike manner. A jury awarded the plaintiffs $210,000 in compen *244 satory and punitive damages. Powercraft appealed; the Court of Appeals affirmed in part and reversed in part. Richards v. Powercraft Homes, Inc., 139 Ariz. 264, 678 P.2d 449 (App.1983). The Court of Appeals ordered the consumer fraud count dismissed, the punitive damage award vacated, and the verdicts in favor of plaintiffs Richards, Farina, and White set aside. The plaintiffs petitioned this Court to review the Court of Appeal’s opinion. We have jurisdiction pursuant to Ariz. Const, art. 6, § 5(3) and Ariz.R.Civ.App.P. 23. While we approve the Court of Appeal’s decision regarding the consumer fraud claim and the punitive damages, we vacate that portion of the Court of Appeal’s decision regarding the verdicts of plaintiffs Richards, Farina, and White. The jury verdict in favor of those three plaintiffs against defendant Powercraft for the breach of the implied warranty of habitability is reinstated for the reasons set forth below.
In setting aside the verdicts in favor of Richards, Farina, and White, the Court of Appeals held that “there must be privity to maintain an action for breach of the implied warranty of workmanship and habitability,” Richards, supra, at 266-67,678 P.2d at 451-52. One basis cited for that holding was this Court’s decision in Flory v. Silvercrest Industries, Inc., 129 Ariz. 574, 633 P.2d 383 (1981). In Flory, we held that warranties implied pursuant to A.R.S. § 44-2331 (the Arizona version of U.C.C. § 2-314(2)) require privity. We specifically stated:
“It is important to note that what we have said herein regarding the requirement of privity to recover for breach of warranty under the Uniform Commercial Code is limited to those actions.”
Id. at 579, 633 P.2d at 388. In the instant case, the warranty at issue is not implied pursuant to A.R.S. § 44-2331.[1] Rather, it is imposed by law. In Columbia Western Corp. v. Vela, 122 Ariz. 28, 592 P.2d 1294 (App.1979), builder-vendors of new homes were held to impliedly warrant that construction has been done in a workmanlike manner and that the structure is habitable. The issue before us now is whether this implied warranty extends to subsequent buyers of the homes.[2]
The courts of several states have confronted this issue. Many of those courts have refused to extend the implied warranty of habitability to remote purchasers or to those not in privity with the builder-vendor. See, e.g., H.B. Bolas Enterprises, Inc. v. Zarlengo, 156 Colo. 530, 400 P.2d 447 (1965); Coburn v. Lenox Homes, Inc., 173 Conn. 567, 378 A.2d 599 (1977); Strathmore Riverside Villas Condominium Ass’n, Inc. v. Paver Development Corp., 369 So.2d 971 (Fla.App.1979); Oliver v. City Builders, Inc., 303 So.2d 466 (Miss.1974); John H. Armbruster & Co. v. Hayden Company-Builder Developer, Inc., 622 S.W.2d 704 (Mo.App.1981); Herz v. Thornwood Acres “D”, Inc., 86 Misc.2d 53, 381 N.Y.S.2d 761 (Justice Ct.1976), aff'd, 91 Misc.2d 130, 397 N.Y.S.2d 358 (App.Term.1977); Brown v. Fowler, 279 N.W.2d 907 (S.D.1979). Others, however, have rejected the imposition of a privity requirement and have allowed remote purchasers to maintain a cause of action against a builder-vendor for breach of the implied warranty of habitability. See, e.g., Blagg v. Fred Hunt Co. Inc., 272 Ark. 185, 612 S.W.2d 321 (1981); Redarowicz v. Ohlendorf 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); Barnes v. Mac Brown & Co., Inc., 264 Ind. 227, 342 N.E.2d 619 (1976); Hermes v. Staiano, 181 N.J.Super. 424, 437 A.2d 925 (Law Div.1981); McMillan v. Brune-Harpenaw-Torbeck Builders, Inc., 8 Ohio St.3d 3, 455
*245 N.E.2d 1276 (1988); Elden v. Simmons, 631 P.2d 739 (Okl.1981); Terlinde v. Neely, 275 S.C. 395, 271 S.E.2d 768 (1980); Gupta v. Ritter Homes, Inc., 646 S.W.2d 168 (Tex.1983); Moxley v. Laramie Builders, Inc., 600 P.2d 733 (Wyo.1979). We find the latter group of eases to be more in line with the public policy of this state and hold that privity is not required to maintain an action for breach of the implied warranty of workmanship and habitability.
We agree with the persuasive comments of the Wyoming Supreme Court in Moxley, supra, that:
“[t]he purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally deserving of recovery is incomprehensible.”
600 P.2d at 736. In addition, such reasoning might encourage sham first sales to insulate builders from liability.
Since Columbia Western, an original homebuyer in this state has been able to rely on the builder-vendor’s implied warranty. The same policy considerations that led to that decision — that house-building is frequently undertaken on a large scale, that builders hold themselves out as skilled in the profession, that modern construction is complex and regulated by many governmental codes, and that homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements and practices — are equally applicable to subsequent homebuyers. Also, we note that the character of our society is such that people and families are increasingly mobile. Home builders should anticipate that the houses they construct will eventually, and perhaps frequently, change ownership. The effect of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work. Because the builder-vendor is in a better position than a subsequent owner to prevent occurrence of major problems, the costs of poor workmanship should be his to bear.
The implied warranty of habitability and proper workmanship is not unlimited. It does not force the builder-vendor to “act as an insurer for subsequent vendees” as the Court of Appeals feared, Richards, supra, 139 Ariz. at 267, 678 P.2d at 452. It is limited to latent defects which become manifest after the subsequent owner’s purchase and which were not discoverable had a reasonable inspection of the structure been made prior to purchase. We adopt the standard set forth by the Indiana Supreme Court in Barnes, supra.
“The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances. The age of a home, its maintenance, the use to which it has been put, are but a few factors entering into this factual determination at trial.”
264 Ind. at 229, 342 N.E.2d at 621. The burden is on the subsequent owner to show that the defect had its origin and cause in the builder-vendor and that the suit was brought within the appropriate statute of limitations. Defenses are, of course, available. The builder-vendor can demonstrate that the defects are not attributable to him, that they are the result of age or ordinary wear and tear, or that previous owners have made substantial changes.
In the present case, the plaintiffs met their burden and proved that the defect had its origin and cause in Powercraft. There was no indication that the original owners substantially changed the structure of the homes. The cracking of the exterior and interior walls, the separation of the floors from the walls, and the separation of the sidewalks, driveways, and carports from the homes were due to improper compacting done by Powercraft prior to building the houses coupled with an apparent systematic lack of reinforcement in the floors, walls, ceilings, and roofs of the houses. Such improper compaction and lack of structural reinforcement could not *246 have been determined from a reasonable inspection prior to purchase. Each of the plaintiffs moved into their homes before the end of 1977. The defects became manifest only after extraordinarily heavy rains in early 1978. Therefore, all of the plaintiffs, whether or not in privity with Power-craft, are entitled to the jury verdicts rendered in their favor.
The decision of the Court of Appeals that the consumer fraud count be dismissed and that the punitive damage award be vacated is approved; the decision of the Court of Appeals that the verdicts in favor of plaintiffs Richards, Farina, and White be set aside is vacated; the verdicts in favor of plaintiffs are affirmed in all other respects. The case is remanded for further proceedings not inconsistent with this opinion.
HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

. Article 2 of the Uniform Commercial Code, A.R.S. § 44-2301 et seq., applies only to the sale of "goods" as that word is defined in §§ 44-2305 and -2307. Sales of realty, and structures affixed thereto, are not within the purview of that definition. Anderson, 1 Uniform Commercial Code § 2-105:32 at 572 (3d ed. 1981).

. This issue is considered in a recent article, Comment, “Implied Warranties in New Homes and Their Extension to Subsequent Purchasers in Arizona,” 1983 Ariz.St.LJ. 113 (1983).