331 F.3d 735
 UNION OIL COMPANY OF CALIFORNIA, Plaintiff-Appellant,
v.
TERRIBLE HERBST, INC., Defendant-Appellee.
Union Oil Company of California, dba/Unocal, a California Corporation, Plaintiff-Appellant,
v.
Terrible Herbst, Inc., a Nevada Corporation, Defendant-Appellee.
 No. 01-16683.
 No. 01-17176.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 7, 2002.
 Filed June 9, 2003.
 
 COPYRIGHT MATERIAL OMITTED Alice A. Seebach, Seebach & Seebach, Los Angeles, California; Rodney M. Jean, Lionel Sawyer & Collins, Las Vegas, NV, for the plaintiff-appellant.
 J. Terry Schwartz and Craig A. Parton, Price, Postel & Parma LLP, Santa Barbara, California; Sean T. Higgins, Las Vegas, NV, for the defendant-appellee.
 Appeal from the United States District Court for the District of Nevada; Roger L. Hunt, District Judge, Presiding. D.C. No. CV-98-01579-RLH.
 Before B. FLETCHER, RICHARD S. ARNOLD,* and RAWLINSON, Circuit Judges.
 Opinion by Judge RICHARD S. ARNOLD; dissent by Judge RAWLINSON.
 OPINION
 RICHARD S. ARNOLD, Circuit Judge:
 
 
 1
 This appeal involves a contract dispute over who is responsible for cleaning up pollution beneath a gas station. Union Oil Company of California (Unocal) bought the service station from Terrible Herbst, Inc., in 1986 on the condition that Herbst would clean up the site. In 1990, the Nevada Department of Environmental Protection (NDEP) relieved Herbst of the duty to monitor the site but did not relieve it of liability for any damage it had already done there. The site remained polluted, but it was not clear whether Unocal or Herbst was at fault. Seven years later, as a precursor to settlement talks over who was responsible for cleaning up the land, Unocal and Herbst signed a series of agreements in which Herbst agreed that the statute of limitations would not run and that it would waive its statute-of-limitations defense as to any claims that Unocal "may assert" against Herbst. A year later, Unocal brought this breach-of-contract suit against Herbst and received a jury verdict of approximately a million dollars. The District Court, however, entered judgment as a matter of law for Herbst on the grounds that the waiver agreement was invalid under Nevada law for lack of consideration, and that the statute of limitations had run on all of Unocal's claims. Additionally, the District Court took the view that the contract applied only to claims that Unocal "may assert," and that the parties intended that phrase to mean claims which were valid, i.e., not time barred. In the alternative, the District Court conditionally granted Herbst's motion for a new trial, an action that is also being appealed.
 
 
 2
 We respectfully disagree with the District Court's interpretation of Nevada law. If a party withholds the assertion of a nonfrivolous claim in reliance on an agreement, that forbearance is sufficient consideration to support a contract. We also think the District Court ascribed a meaning to the waiver agreement that was not supported by the language of the agreement. The District Court also disagreed with some of the factual conclusions of the jury and granted Herbst's request for a new trial. We think that the jury's verdict was not against the clear weight of the evidence. Therefore, we reverse the judgment of the District Court, both on the statute-of-limitations question and on the order for a new trial, and order that the jury verdict be reinstated.
 
 I.
 
 3
 Terrible Herbst, Inc., the defendant, purchased land in Las Vegas, Nevada, in 1981 and built a service station on it. In 1986, while negotiating the sale of the station to Unocal, the parties began to have concerns that pollutants might have escaped into the soil from the gas station. To ensure that the sale would go through, Herbst signed a letter agreement with Unocal promising to monitor and remediate any contamination at the site until the NDEP certified that the contamination problem had been solved. Unocal bought the gas station and assumed operations there.
 
 
 4
 Herbst continued to clean and monitor the site for the next three years. In February of 1989, the amount of fuel contamination at the site suddenly increased. The NDEP ordered Unocal to start monitoring the site as well, because the contaminant was found to contain some of Unocal's proprietary fuel additives. However, Unocal's investigators claimed that they could find no leaks in their storage tanks or records indicating that their own fuel was unaccounted for. In May of 1990, the NDEP said that Herbst need no longer monitor the site, but reserved the right to hold Herbst liable for any pollution Herbst had caused. The NDEP did not request that Herbst do anything regarding the site during the next twelve years. Herbst understood NDEP's action to mean that its obligations under the letter agreement with Unocal had been fulfilled. Meanwhile, Unocal continued to incur costs monitoring and cleaning the site.
 
 
 5
 Unocal wanted to be indemnified for its clean-up costs and contacted Herbst about the site in September of 1997. Herbst's Nevada counsel signed a written waiver of Herbst's statute-of-limitations defense to forestall Unocal from immediately filing suit. The waiver agreement read:
 
 
 6
 Union Oil Company of California ("Union Oil") and Terrible Herbst, Inc. ("Herbst") are attempting to resolve Union Oil's claims relating to Herbst's liability for environmental contamination at and around 101 N. Decatur Boulevard, Las Vegas, Nevada. In furtherance of that effort, Herbst hereby agrees to toll and extend until March 12, 1998, the limitations period on any cause of action that Union Oil may assert against Herbst arising from or relating to the contamination. Herbst hereby waives any defense based on any statute of limitations to any such cause of action in accordance with this agreement. This agreement shall bind Herbst's heirs, executors, agents, principals, assigns, and successors.
 
 
 7
 This agreement was extended five times as the negotiations continued. Unocal filed its complaint in mid-November of 1998, and the case went to trial in June of 2001. Both parties agreed to try the limitations issue before the District Court and submit all other issues to the jury.
 
 
 8
 The District Court held that the agreement did not toll or waive the statute of limitations. It concluded that Unocal's claims were already time-barred when the agreement was signed, and that Nevada law would not allow the forbearing to bring a time-barred claim to serve as consideration for a contract. Alternately, the District Court ruled that the contract was meant to encompass only claims that were viable at the time of contracting and thus was not meant to apply to expired claims. The Court announced that it intended to grant judgment as a matter of law for Herbst and dismiss all of Unocal's claims, including its continuing-trespass and nuisance claims.
 
 
 9
 The District Court (prudently) deferred handing down this ruling, and submitted the contract issue to the jury so that a jury verdict would be on the record. The jury deliberated for three days, determined that Herbst had violated its contract with Unocal, and returned a verdict in favor of Unocal in the amount of $1,086,000 for past and future costs, which was 58 per cent. of the damages sought by Unocal. The District Court then vacated the jury's verdict and granted judgment for Herbst as a matter of law for the reasons stated above. The District Court also determined that the jury's verdict was contrary to the weight of the evidence and conditionally granted Herbst's motion for a new trial. Unocal promptly filed an appeal with this Court.
 
 II.
 
 10
 The most important question on this appeal, and the one we address first, is whether Nevada law allows the forbearing to bring a stale claim to serve as consideration for an agreement waiving a statute-of-limitations defense. The Nevada Supreme Court has not decided this question, so we must apply the law as we believe the Supreme Court of Nevada would. Santana v. Zilog, Inc., 95 F.3d 780, 783 (9th Cir.1996). This Court reviews the District Court's interpretation of Nevada's law de novo. Wetzel v. Lou Ehlers Cadillac, 222 F.3d 643, 646 (9th Cir. 2000) (en banc).
 
 
 11
 The District Court decided as a matter of law that Unocal's forbearance from filing suit could not be consideration. Because of the lack of direct authority in Nevada addressing this question, the District Court sought guidance from the Nevada Supreme Court's interpretation of a statute-of-limitations rule that involves the revival of expired claims: the latter half of Nevada Revised Statutes 11.200.[1]
 
 
 12
 The Nevada Supreme Court interpreted that statute to mean that a debt must be currently enforceable in order for a payment on that debt to extend the time in which suit can be brought on a contract. Havas v. Long, 85 Nev. 260, 262, 454 P.2d 30, 31 (1969), citing Riff v. Kowal, 76 Nev. 271, 352 P.2d 819 (1960). The District Court determined that the requirement that a debt be currently enforceable is an inherent requirement that applies to all statute-of-limitations provisions, including both the first half of N.R.S. 11.200 and N.R.S. 11.390.[2]
 
 
 13
 We respectfully disagree with this conclusion and believe there are several reasons to think that the Nevada Supreme Court never intended for the currently-enforceable requirement to be applied so broadly. Our reasoning is guided by the over arching principle that we should not make unwarranted assumptions in favor of the statute-of-limitations defense. See Howard v. Waale-Camplan & Tiberti, 67 Nev. 304, 312, 217 P.2d 872, 876 (1950) ("While the plea of the statute of limitations is not an unconscionable defense, it is not such a meritorious defense that either the law or the facts should be strained in aid of it, nor should this court indulge in any presumption in its favor.")[3]
 
 
 14
 With this approach in mind, we conclude that the Nevada Supreme Court intended the holding of Havas to be a narrow one. In Havas, the Nevada Supreme Court noted that payment would not resurrect a contract "absent written acknowledgment or new promise to pay, N.R.S. 11.390." 85 Nev. at 262, 454 P.2d at 31. This suggests that if the parties had put something in writing, as they have in the instant case, then they could have revived the debt even though its enforcement was barred by the statute of limitations. This critical fact alone serves to distinguish Havas from the case before us. But it is not the only reason we decline to read Havas broadly.
 
 
 15
 We must also consider that Havas dealt with the second half of N.R.S. 11.200. The statute refers to traditional debts and was probably meant to protect unsophisticated debtors from inadvertently making themselves liable for stale debts. We should not assume that the interpretation of a rule that furthers this end was intended to apply to all contract cases, including those in which two sophisticated parties negotiate to waive a statute-of-limitations defense.
 
 
 16
 The District Court's conclusion also conflicts with the Nevada Supreme Court's policy of encouraging settlement. See Van Cleave v. Gamboni Constr. Co., 101 Nev. 524, 530, 706 P.2d 845, 849 (1985). We believe the rule propounded by the District Court discourages settlement in several ways. First, parties are put in the difficult position of wanting to settle a case, but without knowing if the settlement agreement is vulnerable to the charge of being invalid for lack of consideration if one side waives claims that are later held to have been time-barred at the time of settlement. Another problem is that the party with the questionable claim is encouraged to err on the side of caution and bring suit immediately, without negotiating, because the clock is running, and once the claim expires it would be gone forever no matter what the parties have agreed. Additionally, the waiving party has an incentive to sign waivers until it is sure that the statute of limitations has run, and then to try the statute-of-limitations question on the chance that it can convince the court that the claim was time barred from the beginning, thus giving the waiving party the luxury of not being bound by its own waiver. If the claim was not barred then the waiver served no purpose because the party was waiving a defense that it never had to begin with. We are disinclined to believe that the Nevada Supreme Court intended Havas to have these results.
 
 
 17
 Moreover, the rule advanced by the District Court is contrary to the general principle of contract law that "[f]orbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law...." Restatement (Second) of Contracts § 74(1)(a) (1981). See also J. Perillo & H. Bender, 2 Corbin on Contracts § 7.17, p. 420 (rev. ed.1995); R. Allen, 3 Williston on Contracts § 7.45, p. 720 (4th ed.1992); E. Farnsworth, I Farnsworth § 2.11, pp. 122-23 (2nd ed.1998). The Nevada Supreme Court has often referred to the Restatement of Contracts and treatises such as those we have cited to assist it in resolving novel questions of contract law, and there is no reason to think that it would not do so in this case. See, e.g., Bangle v. Holland Realty Investment Co., 80 Nev. 331, 336, 393 P.2d 138, 140-41 (1964) (adopting the Restatement of Contracts position); Harmon v. Tanner Motor Tours of Nevada, Ltd., 79 Nev. 4, 19, 377 P.2d 622, 630 (1963) (adopting the Restatement of Contracts position); Stanley v. A. Levy & J. Zentner Co., 60 Nev. 432, 446, 112 P.2d 1047, 1053 (1941) (citing with approval the Restatement of Contracts). Lacking evidence to the contrary, we believe that the Restatement rule, which better comports with traditional contract theory, is the one the Nevada Supreme Court would adopt if this question were put to it.
 
 
 18
 Our analysis is not altered simply because Unocal never explicitly promised not to bring suit. An implied promise to forbear exercising a right can be consideration as readily as an explicit promise not to do so. 2 Corbin § 5.27, p. 141. The Nevada Supreme Court implicitly recognized this in Mazzuca v. Fund Ins. Cos., 90 Nev. 409, 528 P.2d 705 (1974). In that case, the Nevada Supreme Court held that implicitly forbearing to exercise a right (cancelling an insurance policy) was sufficient consideration to support a modification of a contract, so long as the insurance company actually did not cancel the policy. Id. at 411-12, 528 P.2d at 706. Likewise, Unocal's forbearance was sufficient consideration to support the agreement even though it was not expressly stated.
 
 
 19
 Having established that refraining from bringing suit on a doubtful claim can be adequate consideration in Nevada, we must decide whether Unocal's claim can be considered "doubtful because of uncertainty as to the facts or the law...." Restatement (Second) of Contracts § 74(1)(a) (1981). The District Court recognized, and we agree, that the question of whether the six-year statute of limitations had run on the breach-of-contract claim was uncertain enough to require further inquiry. The District Court stated that the "[d]efendant asserted a statute-of-limitations defense and sought summary judgment on that issue, which was denied, there being factual issues to be determined by the Court." Unocal's claim was not frivolous, since it survived to trial, and we conclude that that is enough for its non-assertion to serve as consideration.[4] Herbst and Unocal entered into an agreement that allowed them to focus on settlement rather than filing suit. For the reasons stated above, we believe that the Nevada Supreme Court would hold them to their bargain. In general, forbearing to bring suit on a potentially stale claim can be consideration to support a contract. More specifically, Unocal actually forbore exercising a valid legal option: filing a non-frivolous lawsuit. Therefore, consideration existed to make the contract binding, and we must reverse the District Court on this point.
 
 III.
 
 20
 Another question on appeal involves the interpretation of the waiver agreement. The District Court found that the parties intended the phrase "may assert" to mean that Herbst waived its statute-of-limitations defense only as to claims that legitimately could have been asserted against it at the time, which, under the District Court's interpretation of Nevada law, could not be claims on which the statute of limitations had already run. The Court stated that "the language `may assert' means that they may legitimately assert, or upon claims that are actually enforceable and in this case were not enforceable at the time that agreement was entered into. And so the extension only granted extension on causes of action that were still existing and enforceable."
 
 
 21
 Even under the clearly erroneous standard (assuming this was a finding of fact), we must conclude that the District Court was in error on this question. The problem with its interpretation is that it seems to render the waiver agreement at least partially nugatory. If the claims in question were not at least potentially barred by limitations at the time the agreement was signed, much of the reason for obtaining the waiver agreement disappears. Possibly the language could be interpreted to refer to claims that were not barred at the time the waiver agreement was signed, but that might later become barred before Unocal brought suit. Such an interpretation does not completely obliterate the purpose for the agreement, but it does reduce it greatly. This is too great a weight for the phrase "may assert" to bear. The natural meaning of the phrase includes any claims that Unocal might later choose to assert. That is the plain language of the contract, and that language should be given effect absent compelling evidence to the contrary, of which there is none in this case. The breach-of-contract claim was one that Unocal might later assert and was within the scope of the waiver agreement. As a result, Herbst waived its statute-of-limitations defense as to that claim.
 
 IV.
 
 22
 We review the District Court's grant of a conditional new trial for abuse of discretion. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 818 (9th Cir.2001). The trial court may grant a new trial only if the jury's verdict was against the clear weight of the evidence. Id. at 819. "[I]f the jury's verdict is not against the clear weight of the evidence, we may find that a district court abused its discretion in granting a new trial." Id.
 
 
 23
 The District Court believed that the jury had failed to appreciate certain facts and ruled that the jury's verdict was contrary to the clear weight of the evidence. For instance, the District Court believed Herbst's contractual obligations were satisfied by the 1990 letter from the NDEP. The Court also cited evidence from Unocal's experts indicating that Unocal was responsible for significant releases of pollutants during Unocal's operation of the site. The District Court based its ruling, in part, on a concern that the jury might have mistaken Herbst's contractual liability to clean up the mess it made at the site for an obligation to rid the site of contaminated soil, regardless of who actually contaminated it. Additionally, it thought that Herbst's expert's testimony on pollutant decomposition could not be reconciled with the jury's verdict. The District Court also believed that the jury failed to take into consideration the fact that Unocal failed to mitigate its damages by seeking reimbursement from the state of up to a million dollars.
 
 
 24
 After examining the record, we find substantial evidence that goes both ways on all of these points. There is clear testimony that Herbst had not satisfied its agreement with Unocal because it had failed to obtain a certificate from the NDEP, a document that the NDEP would issue when warranted. There was also evidence that, at most, a few hundred gallons of Unocal's gasoline were present at the site, in comparison to more than 10,000 gallons of Herbst's gasoline. The District Court also determined that the jury failed to take into consideration Unocal's failure to mitigate its damages. We find this assumption unwarranted; the jury returned a verdict of approximately $800,000 less than Unocal requested. This difference may reflect the jury's discounting Unocal's damages because the company failed to mitigate its damages. In either case, we do not find this a sufficient justification for disregarding the jury's verdict. Nor do we think it appropriate to assume that the jury misunderstood the scope of Herbst's liability simply because of the verdict it returned.
 
 
 25
 This case was an eight-day jury trial and involved several different environmental pollutants and conflicting testimony. The District Court was in the best position to evaluate the evidence and its effect on the jury and was able to cite specific examples of evidence it felt the jury had not evaluated properly. We do not lightly disagree with the trial courts in such cases. But upon review, we cannot say that there is any part of the jury's verdict that was against the clear weight of the evidence. It is not the courts' place to substitute our evaluations for those of the jurors. Therefore, we believe the District Court abused its discretion in granting a new trial.
 
 
 26
 Accordingly, the decision of the District Court is reversed, and the cause is remanded with instruction to reinstate the jury's verdict and enter judgment thereon.
 
 
 27
 REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard S. Arnold, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The entire statute reads:
 The time in NRS 11.190[the general statute-of-limitations provision] shall be deemed to date from the last transaction or the last item charged or last credit given; and whenever any payment on principal or interest has been or shall be made upon an existing contract, whether it be a bill of exchange, promissory note or other evidence of indebtedness if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.
 Nev.Rev.Stat. 11.200 (2002) (emphasis added).
 
 
 [2]
 Section 11.390 provides:
 No acknowledgment of promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this [statute of limitations] chapter, unless the same be contained in some writing signed by the party to be charged thereby, except as provided in N.R.S. 11.200.
 Nev.Rev.Stat. 11.390 (2002).
 
 
 [3]
 This language has been repeatedly cited with approval. See,e.g., State Commission for Equal Rights of Citizens v. City of North Las Vegas, 93 Nev. 446, 448, 566 P.2d 1139, 1140 (1977); Hiles Co. v. Johnston Pump Co. of Pasadena, Cal., 93 Nev. 73, 77, 560 P.2d 154, 156 (1977); Servatius v. United Resort Hotels, Inc., 85 Nev. 371, 373, 455 P.2d 621, 623 (1969).
 
 
 [4]
 Unocal argues that it also refrained from bringing other claims. Because we find that not bringing the breach-of-contract claim was adequate consideration, we need not address whether Unocal's other claims would have sufficed in its stead
 
 
 RAWLINSON, Circuit Judge, Dissenting:
 
 28
 I must respectfully dissent. I would not presume to secondguess the district court judge on a matter of state law that has not been decided by the state's Supreme Court. I prefer to certify to the Nevada Supreme Court the question of whether Nevada law recognizes forbearance of a stale claim as adequate consideration. As we noted in Kremen v. Cohen, 325 F.3d 1035, 1038 (9th Cir.2003), "we have an obligation to consider whether novel state-law questions should be certified — and we have been admonished in the past for failing to do so." (citation omitted). Having so considered, I would certify.