Belknap,
Oct. 5, 1948. } No. 3726.

DOROTHY L. WILLIAMS, d/b/a New England Estates

*v.*

REBECCA A. WALKER & a.

*Richard F. Upton, Robert W. Upton* and *Thomas J. McIntyre (Mr. Richard F. Upton* orally), for the plaintiff.

*Nighswander & Lord (Mr. Nighswander* orally), for the defendants.

JOHNSTON, J.   The plaintiff was entitled to have the case go to the jury if there was any evidence that she was employed and that she was the effective cause of procuring Mr. Raisbeck as a buyer.

The plaintiff's secretary testified that the last of July or the first of August, 1945, she obtained a listing of the White Owl property for sale from Mr. Walker.   The plaintiff stated on the stand that after the

listing she had the following conversation with Mrs. Walker: " 'How is business?' She said, 'Fine.' I said, 'Have you anybody interested in your cabin property?' She said, 'We have had a few people.' I said, 'Good. We are going to do everything we can.' She said, 'Good. Keep plugging.' " With respect to the authority of her husband, Mrs. Walker testified that she told Mrs. Williams when the latter claimed on September 13 that Mr. Raisbeck was her customer: "Mr. Walker has handled that matter, and you had better talk to him on it." This was evidence from which it could be found that the defendant personally authorized the employment of Mrs. Williams and also that she authorized her husband to employ her.

If Mrs. Williams was the effective cause of inducing Mr. Raisbeck to purchase the White Owl, then she performed her contract and earned her commission. Restatement, Agency, s. 448. It is impossible to measure in quantitative units the efforts necessary to constitute the effective cause. This is not the case of where more than one broker is employed and seeks a commission. The fact that the owner personally or through agents carries on the negotiations that lead to the purchase does not deprive the broker of his commission. *Morrison* v. *Hall*, 78 N. H. 48; *Philbrick* v. *Chase, ante*, 82. Nor is the plaintiff barred by the fact that the mind of the customer is fully made up to buy the kind of property to which his attention is called or by conduct on his part to secure information and to negotiate. The meaning of effective cause for the purpose of ascertaining whether or not a broker has earned his commission has been stated as follows: "An agent is an 'effective cause' . . . when his efforts have been sufficiently important in achieving a result for the accomplishment of which the principal has promised to pay him so that it is just that the principal should pay the promised compensation to him." Restatement, Agency, s. 448, *comment* a. This describes conduct that is more than merely trifling.

By her letter of August 17, the plaintiff was the first, it could be found, to inform Mr. Raisbeck that the White Owl was for sale. Although this letter did not give the name of the cabins or the owner, the similarity of the description with that in "Cabin Trails" served to identify the property. The letter did specify the number of cabins, the price, the dining room, the recreation hall and the shore frontage. Mr. Raisbeck testified that if he had studied the description given in this letter and compared it with that of the White Owl, he would have known the property to be the same. His letter of August 21 indicated that he was interested and his inquiry whether the property was on

Route 3 could be found to show that he had identified it with the White Owl.

A broker secures a customer if he informs him of the property and of the fact that it is for sale, so that as a result the purchaser is led to the seller. "P promises A a commission if he will find a purchaser for P's land. A advertises, and the advertisement is seen by T who, in response thereto, goes directly to P and consummates the transaction without A's knowledge. A is entitled to his commission." Restatement, Agency, s. 448, *comment* d, *illustration* 1. See also, *Morrison* v. *Hall, supra; Philbrick* v. *Chase, supra.* The possibility or the probability that the buyer would have purchased the property without the efforts of the particular broker is not decisive as a matter of law that the broker is not entitled to his commission. At the most they are entitled to consideration in determining the importance that should be attached to the broker's efforts.

Not only is there a sequence of events at least consistent with the claim that Mrs. Williams informed and interested Mr. Raisbeck of and in the White Owl cabins, but also there is evidence of consciouness on his part that her efforts were of such importance that she had earned a commission. Her undertaking was to induce some one to become a customer for the defendant's cabins. Consciousness on the part of the buyer that she was or might be the effective cause of his willingness to buy would be relevant evidence of the fact of her being so. Mr. Raisbeck did not reach Mrs. Williams by telephone on September 1, 2 or 3 although in Laconia on those dates and his letter of August 31 to her indicated that he would try so to do. When he asked the plaintiff's secretary over the telephone on September 12 to have Mrs. Williams call him at the White Owl, he said, according to the secretary: "Would I be sure to tell her if she called him at the White Owl cabins not to mention anything about business." On September 13, Mr. Raisbeck called the plaintiff by telephone. She testified the following conversation took place: "He said, 'Mrs. Williams, I don't want to take any more of your time because I bought the White Owl directly.' I said, 'Mr. Raisbeck, I don't understand how you figure you can do that.' He said, 'I have bought it, and there is nothing you can do about it. However, I am going to make a change in the insurance when I take it over next April and I will see at that time that you are taken care of.'" This avoidance of Mrs. Williams and attempt to prevent knowledge on the part of Mr. and Mrs. Walker that she had worked on the sale could be found by the jury to be due to a desire on the part of Mr. Raisbeck to save the broker's commission. The de-

fendant's motions for a nonsuit and for a directed verdict were properly denied.

The exception to the order that the three actions be tried together presents no question of law. *Carbone* v. *Railroad*, 89 N. H. 12, 19, and cases cited.

The defendant requested an instruction that if Mr. Raisbeck was not able and willing on September 13, the date of the writ, to purchase the property on terms satisfactory to the owner, the plaintiff was not entitled to recover. This claim was that the action was brought prematurely. It was the equivalent of a plea in abatement and not of one in bar. Without discussing the evidence upon which the claim is based, it is sufficient to say that it was waived since it was not raised before going to trial on the merits. *Welch* v. *Miller*, 210 Pa. 204; 1 Am. Jur. 22.

By her sixth request the defendant asked that the jury be instructed that if the purchaser made his contact by writing to "Cabins and Trails" in response to a statement in that publication and not in response to the plaintiff's letter of August 17 and became interested because of Mr. Walker's reply and not because of plaintiff's said letter, the verdict should be for the defendant. Such an instruction would have been correct and would have been more specific than the abstract propositions of law given by the Court. The Court might well have instructed substantially in this manner, but it was not reversible error to refrain from doing so. Practically, the charge of the Court that "the plaintiff's undertaking was to produce a customer willing and able to buy," was not ambiguous. It was within the comprehension of a jury. This contention of the defendant's could well have been forcibly argued by her counsel in his closing argument to the jury and undoubtedly was. It was within the discretion of the Trial Court whether to apply the legal principle to the evidence stated. *Colby* v. *Lee*, 83 N. H. 303, 307; *Philbrick* v. *Chase, supra,* 86. There is no reason to doubt that the jury correctly applied the legal principles stated.

The defendant relies on the case of *Bjork* v. *Company,* 79 N. H. 402, to substantiate her position on this point. In that action, which was a master and servant case, the plaintiff claimed that he was injured by the jumping back of a piece of wood and that he was not warned of this risk. The Court erroneously submitted to the jury that the accident may have happened in some other way than that in issue. To offset this error it was held that the defendants were entitled to a specific instruction that unless the accident happened because of the

jumping back of the wood as claimed by the plaintiff, a verdict should be returned for the defendants. In the present case no corresponding error in the charge has been pointed out.

The defendant's request No. 13 that the plaintiff could not recover unless she notified the defendant of her claim for a commission before a binding agreement was made was erroneous. In *Philbrick* v. *Chase, supra,* 85, it was stated that the broker's right to a commission is not affected by the owner's lack of knowledge of the part played by the broker unless the owner "was prejudiced in some way by the ignorance . . . and such ignorance was due to no fault of her own." "Having promised the broker a commission, the principal ordinarily should know that the appearance of a customer may have been caused by the broker, and to avoid liability for payment he should make inquiries of the broker." Restatement, Agency, s. 448, *comment* f. The defendant did not have the right that this request be given in the form stated. Moreover, no binding agreement was made until November 7 and the defendant knew of the plaintiff's claim on September 13.

In reply to a question by the jury after it had retired, the Court instructed that the price to be considered in computing the commission was $90,000. It was not disputed that the property that was the subject of the contract with the plaintiff, if there was a contract, sold for this sum of money. The fact that some of it consisted of equipment as incidental to the real estate is immaterial.

*Judgment on the verdict.*

All concurred.