JOHN BANGLE, JOHN BANGLE, Inc., JOHN F. SEVERIN, CARL WHITE, Jr., ROBERT L. BLACK, MURIEL GREGORY, and SEVERIN DEVELOPMENT, Inc., a California Corporation, Invidually and dba Palomar Associates, Appellants, v. HOLLAND REALTY INVESTMENT CO., Inc., Respondent.

No. 4720

June 19, 1964          393 P.2d 138

*Stewart & Horton,* of Reno, for Appellants.

*Lionel & Gunderson,* of Las Vegas, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

Holland, a licensed real estate broker, brought suit against Bangle and Palomar Associates to recover commissions for selling houses in the Sunset Manor Subdivision, Las Vegas, Nevada. He won below. A jury awarded him $38,800 against all defendants, and judgment was entered. This appeal followed. As we see it, the judgment cannot stand, for it necessarily rests upon an "exclusive listing" agreement which, because of its failure to contain a definite termination date, is not enforcible as a matter of law.

In brief the record shows that Palomar Associates purchased land upon which 97 subdivision homes were built, and Bangle was the general contractor who built them. The net profits from the subdivision venture were shared equally by Palomar and Bangle. On November 30, 1959, before the land was acquired and before Palomar and Bangle entered into their arrangement, Holland and Bangle made a written "commission agreement," apparently in anticipation of the possible acquisition of Sunset Manor by Bangle.[1] That agreement designated Holland as the exclusive agent for Bangle with "an exclusive right to sell any houses which I or my company may build or cause to have built on property tentatively known as Sunset Manor in West Las Vegas, Nevada, for a minimum commission of $400 a house." Each signed the agreement. However, it did not contain a specific termination date as required by NRS 645.320. No other

---

[1]Bangle made two purchase proposals. Each was rejected by the owners. Later Bangle interested Palomar Associates who were financially able to make an offer acceptable to the owners. A sale was consummated. Bangle took title temporarily and then conveyed to Palomar Associates. Holland was paid a commission on that transaction.

agreement was made between Holland and Bangle governing Holland's commissions for selling houses in Sunset Manor, nor did Holland ever reach an understanding with Palomar Associates in that regard. All 97 homes that were built in Sunset Manor were sold. It is stipulated that Holland was directly responsible for the sale of 28 of them.

Holland based his right to recover against Bangle on two theories. First, he took the position that he was entitled to recover a $400 commission for each of the 97 houses sold, because of the express language of the exclusive listing agreement. Second, that, in any event, he should be allowed a quantum meruit recovery for services performed. His case against Palomar sought a quantum meruit recovery or, alternatively, that Palomar be bound by the Holland-Bangle agreement of November 30, 1959, on the theory that Palomar had "adopted" it.[2] The jury was instructed on each theory. By returning a verdict for Holland against Bangle and Palomar in the amount of $38,800 (which figure equals $400 a house for 97 houses), it is plain that the jury based its decision upon the exclusive listing agreement alone and rejected any other basis for relief. The amount of the verdict cannot otherwise be explained. Our task, therefore, is to decide whether the Holland-Bangle agreement of November 30, 1959, is enforcible.

1. *The exclusive listing statute.* In 1955 the Nevada Legislature enacted NRS 645.320. It reads: "Every exclusive listing shall: 1. Be in writing. 2. Have set forth in its terms a definite, specified and complete termination. 3. Contain no provision requiring the person signing such listing to notify the real estate broker of his intention to cancel the exclusive features of such listing after such expiration date. 4. Be signed by both the listing property owner or his duly authorized representative and the listing agent or his duly authorized representative in order to be enforcible."

---

[2]It was also charged that Palomar had wrongfully induced Bangle to breach his agreement with Holland, and that Palomar and Bangle had "conspired" to preclude Holland from a recovery on the exclusive listing agreement. Neither claim is supported by the record, and we will not enlarge this opinion by discussing them.

The provision, in reality, is a statute of frauds limited to exclusive listing agreements for the sale of real property. In Gifford v. Straub, 172 Wis. 396, 179 N.W. 600, the court in considering a similar statute—one more sweeping in scope than NRS 645.320—stated: "The statute was doubtless enacted for reasons similar to those which led to the enactment of the statute of frauds. It was to prevent frauds and perjuries. Its enforcement will sometimes protect brokers who have rendered valuable services too little appreciated. More often it will protect owners from unfounded claims. It will tend to prevent the flood of litigation arising out of misunderstandings between well-meaning persons."

The Holland-Bangle agreement of November 30, 1959, does not contain a termination date. The duration of Holland's exclusive agency is not specified. However, Holland suggests that the omission has no significance. He argues that the statute does not apply to a transaction involving property not yet acquired and subdivision homes not yet built, for there is nothing to "list." We reject this contention. We believe that property can be "listed" for sale in anticipation of future ownership, and that the statutory language "every exclusive listing shall * * *" embraces this circumstance as well as the case where a present owner of property lists it for sale. Indeed, it seems to us that there may be a greater need for an exclusive listing agreement to contain a definite termination date, when made in anticipation of property acquisition and expected multiple sales, than where only a single transaction involving presently owned property is embraced by the agreement. The opportunity for controversy may be increased proportionately. The case before us points to the truth of this observation. The absence of such a provision (among other things), appears to have contributed to the onset of this litigation. Their respective rights were in limbo, instead of fixed, and controversy developed. We hold that NRS 645.320 applies to the Holland-Bangle agreement and that enforcement is precluded because of its failure to

contain a definite termination date. Gifford v. Straub, supra; Elbinger Co. v. Meyer Mfg. Co., 3 Wis.2d 202, 87 N.W.2d 807. As the agreement is not enforcible against Bangle, a fortiori a claim against Palomar Associates based upon an adoption of that agreement must also fail.[3]

2. *Disposition of the appeal.* Having determined that the judgment for $38,800 cannot stand, for reasons already expressed, we turn to consider whether the cause should be remanded for a new trial and the limitations, if any, to be imposed. The record shows conclusively that Holland procured 28 buyers for homes in the subdivision and that sales to those buyers were made. He is entitled to be compensated for the reasonable value of his services rendered in procuring those purchasers.[4] However, on this phase of the matter, viz., quantum meruit, as a predicate for relief, we are constrained to treat Bangle and Palomar Associates differently.

Before the enactment of NRS 645.320 we recognized that a property owner could be found liable upon quantum meruit for the commission of a real estate broker to whom an oral exclusive listing was given. Close v. Redelius, 67 Nev. 158, 215 P.2d 659. Relying upon that opinion Holland contends that, should we declare his exclusive listing agreement with Bangle unenforcible (which we have done), nonetheless quantum meruit relief is available to him. He should be treated simply as a broker who had performed services for Bangle and should be compensated. On the other hand, Bangle argues that, by passing the exclusive listing law in 1955, the legislative intent was to forbid any recovery by a

---

[3]In any event the record is clear that Palomar never adopted the Holland-Bangle agreement. Palomar consistently refused to agree to pay Holland more than $200 a house. Holland's insistence upon a $400 per house commission culminated in this litigation.

[4]Indeed, the court instructed the jury, in substance, that if a liability was found on quantum meruit, Holland's compensation would be limited to the reasonable value of services rendered in procuring the 28 purchasers. Had the jury imposed a quantum meruit liability, its verdict would necessarily have been for a lesser amount.

broker who had been granted an exclusive right to sell, unless the statutory requirements are fully met. Each argument is persuasive. However, the weight of case authority construing similar statutes precludes a quantum meruit recovery reasoning that, if the broker were entitled to obtain the value of services, the statute would not have the effect intended and the legislative purpose would be frustrated. Restatement, Agency 2d § 468(2) ;[5] Annot., 41 A.L.R.2d 905; Restatement, Contracts § 355(3).[6] We choose to adopt this view. It seems to us that the purpose of NRS 645.320 is best served by denying any relief to a broker or salesman, who claims an exclusive agency to sell, unless the requirements of the statute are complied with. We therefore conclude that, as to Bangle, the judgment below must be reversed, with direction to enter judgment in Bangle's favor.

The Holland quantum meruit claim against Palomar Associates is a different matter. No express agreement (exclusive agency or otherwise) was ever made between them. Therefore NRS 645.320 does not bar Holland from recovering the reasonable value of his services from that defendant if the requisites of a quantum meruit claim are present. Though it is true that Holland and Palomar were never able to reach an agreement as to the amount of Holland's compensation (Palomar being willing to pay a commission of $200 a house and Holland insisting on the $400 figure specified in his contract with Bangle), it is equally true that Holland performed valuable services for Palomar with the latter's knowledge and acquiescence. As heretofore stated, it is stipulated that

---

[5]Restatement, Agency, supra: "If a statute provides that a person employing another for a specified purpose shall not be liable to the other for compensation although the other renders the promised performance, unless the employer has signed a memorandum in writing, a person has no duty to pay to another whom he orally employs for such purpose either the promised compensation or the reasonable value of services rendered." See Restatement comment on this subsection.

[6]Restatement, Contracts, supra: "The remedy of restitution is not available if the statute that makes the contract unenforcible so provides, or if the purpose of the statute would be nullified by granting such a remedy."

Holland was directly responsible for the sale of 28 homes. In these circumstances it is appropriate to imply a promise by Palomar to pay the reasonable value of those services. W. Ross Campbell Co. v. Herbert's of Los Angeles, 110 Cal.App. 244, 293 P. 805; cf. Whitman v. Brandis, 78 Nev. 320, 372 P.2d 468.

The judgment below is reversed and the case remanded with the direction to enter judgment in favor of Bangle and against Holland; and with the further direction that a new trial be granted Holland against Palomar Associates limited to the single issue of the reasonable value of Holland's services in procuring the purchasers of 28 homes in the Sunset Manor Subdivision.

BADT, C. J., and McNAMEE, J., concur.