I. CLAIRE MORROW, Appellant, *v.* FAY BARGER, ANNE BARGER, JOHN C. CARPENTER, Respondents.

No. 17013

May 29, 1987 737 P.2d 1153

*Gregory D. Corn,* Reno, for Appellant.

*A. Grant Gerber, P. Michael Marfisi,* Elko, for Respondents.

## OPINION

*Per Curiam:*

I. Claire Morrow claims she is entitled to a real estate broker's

commission pursuant to a written listing agreement, an oral listing agreement or an implied listing agreement for the sale of the ranch of Fay and Anne Barger. The district court granted the Bargers' motion for summary judgment concluding as a matter of law that no employment agreement existed and that Claire Morrow was not the procuring cause of the sale.

## The Facts

For several years prior to 1979, Fay Barger and Anne Barger had been attempting to sell their Nevada ranch through several different brokers. On March 7, 1979, the Bargers signed a written listing agreement with Claire Morrow, a licensed real estate broker. The 1979 agreement, which was of indefinite duration, is signed by the Bargers and states:

> We authorize Bob and Claire Morrow of Ruby Mountain Real Estate to sell the ranch at the terms listed above and if a sale is closed to any buyer registered with us in writing, we will pay Ruby Mountain Real Estate a brokerage fee of 5% of the sale price at close of escrow.

Between the spring of 1979 and the spring of 1981, Robert ("Bob") Morrow, salesman, agent, and husband of Claire Morrow, contacted John Carpenter, Max Spratling, and Burke Peterson. Bob Morrow gave Spratling some maps of the Barger ranch, explained the grazing rights and showed him most of the ranch including the cattle. Bob Morrow informed Carpenter of Spratling's interest and provided Carpenter with a copy of the Morrows' investigations into water rights, deeded acres, BLM grazing rights, AUM permits, farm machinery, irrigation and equipment relating to the Barger ranch. Claire Morrow registered Peterson, Carpenter, and Spratling as buyers with the Bargers under the 1979 written listing agreement. An offer, allegedly from Peterson and Spratling, was prepared by Claire Morrow but never signed by any party nor accepted by the Bargers.

On December 5, 1980, the Morrows and the Bargers executed another listing agreement. This listing expired on April 15, 1981; a sixty-day grace period ended on June 15, 1981. No offers were presented to the Bargers as a result of the 1980 listing agreement.

When the 1980 listing expired, the Bargers declined to execute another written listing agreement with the Morrows. The Morrows claim that Fay Barger orally asked them to continue their efforts to sell the ranch. The Bargers decided to farm the property that summer of 1981. When Bob Morrow contacted the Bargers again in October of 1981, Fay Barger indicated that he was working on a deal to sell the ranch with Carpenter. After this point in time, the Morrows claim that they were excluded from the deal.

On March 5, 1982, the Bargers sold their ranch in a complex series of transactions which involved eight conveyances. The parties to the transaction involved, at different stages, Peterson, Spratling, Carpenter, and Kennecott Copper Corporation of Utah. Kennecott traded the interest it acquired in the Barger ranch to the Spratlings for land owned by them in Utah. Claire Morrow asserts that the sale reflects the transaction which she and Bob Morrow helped promote between the Bargers and Carpenter, Peterson and Spratling.

## Discussion

NRCP 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On appeal, all evidence favorable to plaintiff must be accepted as true. Crockett v. Sahara Realty Corp., 95 Nev. 197, 591 P.2d 1135 (1979).

Before a real estate agent is entitled to a commission, the real estate agent must prove (1) that an employment contract existed and (2) that he or she is the procuring cause of the sale. Shell Oil Company v. Ed Hoppe Realty, Inc., 91 Nev. 576, 580, 540 P.2d 107, 109-10 (1975). Claire Morrow makes three alternative claims that an employment agreement did exist at the time of the sale of the Barger ranch. She claims an employment agreement existed in the form of a written listing agreement, oral listing agreement, or implied listing agreement.

The district court found that the 1979 written listing agreement did not create a valid "exclusive" listing agreement pursuant to NRS 645.320 because that contract did not contain a termination date.[1] The district court did not address the validity of the 1979 written listing agreement as a "non-exclusive" listing agreement.[2] Claire Morrow argued in her opposition to summary judgment that the 1979 listing agreement could be an enforceable contract if viewed as a "non-exclusive" listing agreement.

---

[1]NRS 645.320 provides, in part, that "[e]very *exclusive* listing shall . . . have set forth in its terms a definite, specified and complete termination." (Emphasis added). NRS 645.320 is a statute of frauds limited to *exclusive* listing agreements for the sale of real property. Bangle v. Holland Realty Investment Company, Inc., 80 Nev. 331, 334, 393 P.2d 138, 139 (1964).

[2]There are two types of "exclusive" listing agreements. *See* D. Barlow Burke, Jr., *Law of Real Estate Brokers,* §§ 2.2.2 and 2.2.3 (1982). An exclusive agency contract arises when the seller designates a particular broker to sell the property, to the exclusion of other brokers, for a specified period of time; the seller retains the right to sell the property directly. *See id.* at § 2.2.2. An exclusive right to sell is an exclusive agency contract with one

The testimony in the depositions supports a conclusion that the 1979 listing agreement was not intended to be an "exclusive" listing agreement. Fay Barger claims he only entered into open listing agreements with the myriad of brokers who tried to sell the Barger ranch. Claire Morrow's description of the 1979 written listing agreement reveals that she did not intend the 1979 written listing agreement to be "exclusive." Claire Morrow believed that if she registered a buyer under the 1979 listing agreement and continued to work with that buyer, she would receive a commission for those buyers. She believed that this arrangement existed until either she or the Bargers canceled the agreement. Claire Morrow did not state that she believed that she was the only agent who could sell the property.

Claire Morrow's position is that the 1980 written listing agreement did not supersede the 1979 written listing agreement. Claire Morrow asserts that the 1980 written listing agreement was executed in order to pin down the Bargers to a lower price for any newly registered buyers which she submitted during the period from December 5, 1980 until April 15, 1981. She claims that the 1979 written listing agreement was not terminated by either party. Whether the 1979 listing agreement was terminated by the 1980 listing agreement is a question of fact.

Claire asserts that the 1979 written listing agreement was enforceable in March 1982, when the ranch was sold. When the 1980 written listing agreement ended and the Bargers declined to enter into another written listing agreement, Claire claims that the Bargers orally encouraged the Morrows to continue pursuing the sale of the ranch. The meaning and significance of this alleged oral arrangement upon the 1979 listing agreement is a question of fact.

If the evidence in favor of the Morrows is viewed as true, then a genuine issue of material fact exists as to whether the 1979 written listing agreement was in effect at the time of the 1982 sale. Nonetheless, the 1979 written listing agreement would be binding only if the terms of the ultimate sale of the ranch in March of 1984 fall within the terms articulated in the 1979 written listing agreement.

Claire Morrow raises an alternative claim for recovery pursuant to an oral employment agreement. The district court found that no contract of employment existed as the result of oral promises made to the Morrows by the Bargers after the expiration of the 1980 listing agreement in April 1981.[3] Claire Morrow

---

extra feature: the seller does not retain the right to sell the property directly. *See id.* at § 2.2.3.

[3]Claire Morrow does not assert that she should recover pursuant to the 1980 written listing agreement.

stated at her deposition and in an affidavit that after the 1980 written listing agreement expired, the employment relationship went to an open oral listing agreement. Claire Morrow asserts that Fay Barger represented to the Morrows that they should continue working on the sale of the ranch. Claire Morrow asserts that Fay Barger assured the Morrows that their "interest would be protected."

The district court appears to have erred by finding that there was no oral listing agreement subsequent to April 15, 1981. This error, however, is harmless since Claire's contacts with Peterson, Spratling, and Carpenter occurred from the spring of 1979 until March of 1981. No significant efforts were expended by the Morrows pursuant to any oral contract subsequent to April 15, 1981.

Finally, Claire Morrow asserts that an employment relationship existed by virtue of an implied open listing agreement. If the broker procures a purchaser willing to pay a lower price than the terms of the listing agreement, the seller cannot deprive the broker of his or her commission by conducting the final negotiations and selling at that lower figure to the purchaser procured by the broker. Humphrey v. Knobel, 78 Nev. 137, 141, 369 P.2d 872, 874 (1962) (seller sold property fourteen days after listing agreement expired).

A promise to pay the reasonable value of services may be implied, and a real estate agent may recover under the theory of *quantum meruit,* unless the parties have executed an exclusive listing agreement which is invalid under NRS 645.320. Bangle v. Holland Realty Investment Company, 80 Nev. 331, 335-36, 393 P.2d 138, 140 (1964); *see Shell Oil,* 91 Nev. 576, 540 P.2d 107 (seller took benefits of broker's efforts and sold property directly to buyer). A broker who produces a ready, willing and able buyer will be entitled to a commission in the amount of the reasonable value of services rendered on consummation of the sale even when there is no express agreement as to amount. Campbell-Leonard Realtors v. El Matador Apartment Company, 556 P.2d 459, 463 (Kan. 1976). The vendor cannot benefit by his own attempt to exclude a broker. *See Humphrey,* 78 Nev. 137, 369 P.2d 872; Close v. Redelius, 67 Nev. 158, 215 P.2d 659 (1950).

The district court erred by concluding that, as a matter of law, Claire Morrow did not state a claim for recovery pursuant to an implied listing agreement.

Claire Morrow presented evidence, which, if viewed as true, shows that an employment relationship did exist at the time of the sale of the Barger ranch in March of 1982. Claire Morrow has the

further burden of establishing evidence to show that she was the procuring cause of that sale.

If a real estate broker has been a "procuring" or "inducing" cause of a sale, he or she is entitled to the agreed commission, irrespective of who makes the actual sale or terms thereof. Schneider v. Biglieri, 94 Nev. 426, 427, 581 P.2d 8, 9 (1978); Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 409 P.2d 627 (1966). The broker's presence at the sale is not required for that broker to earn his or her commission. Horton v. Colbron, 150 P.2d 315, 319 (Wyo. 1944).

A finding of procuring cause requires that the broker demonstrate "conduct that is more than merely trifling." Schneider, 94 Nev. at 427, 581 P.2d at 9; Bartsas, 82 Nev. at 9, 409 P.2d at 629. In non-exclusive brokerage situations, merely introducing the eventual purchaser is not enough. Id. To constitute the predominating cause of the sale, it is not enough that the broker contributes indirectly or incidentally to the sale by imparting information which tends to arouse interest. Nelson v. Mayer, 265 P.2d 52, 56 (Cal.Ct.App. 1954); Sessions v. Pacific Improvements Company, 206 Pac. 653, 660 (Cal.Ct.App. 1922). The broker must set in motion a chain of events which, without break in their continuity, cause the buyer and seller to come to terms as the proximate result of his or her peculiar activities. Id.

The district court concluded that, as a matter of law, Claire Morrow was not the procuring cause of the sale of the Barger ranch. The district court relied on Nollner v. Thomas, 91 Nev. 203, 533 P.2d 478 (1975), and Bartsas, 82 Nev. 6, 409 P.2d 627.

Nollner is inappropriate authority for the case at hand since Claire Morrow's 1979 written non-exclusive listing agreement did not have a termination date or a grace period and since she relies upon an implied listing agreement. Nollner specifically stated that:

> Here the action is based on a listing agreement. [Footnote omitted.] The right of the respondent to compensation must be governed by that agreement. It did not make the broker's commission dependent upon the respondent being the "procuring cause" but upon the fact that he would sell the property in accordance with the terms of the agreement.

In Bartsas, this court held that the broker must be given an opportunity to consummate a sale with the ultimate purchaser where he or she initially introduced that purchaser and has not abandoned negotiations. Bartsas, 82 Nev. at 10, 409 P.2d at 630. The broker must be given such an opportunity even where the purchaser has made a separate, more attractive offer either

directly to the seller or through another broker. *Id.* The seller must notify the procuring broker of the later offer and give that broker a reasonable time to protect his or her commission or decline the sale. *Id.* Good faith and fair methods of trade require such a course of conduct. *Id.*

The *Bartsas* court reversed the district court's judgment awarding the commission to the broker who consummated the sale. The matter was remanded for a new trial to determine whether the broker who originally submitted the offer or the broker who consummated the sale was the procuring cause. *Bartsas* is authority for denying rather than granting the motion for summary judgment.

In addition, the district court's reliance upon Estate of Greenberg v. Skurski, 95 Nev. 736, 602 P.2d 178 (1979), is not dispositive. *Greenberg* states that a precondition of entitlement to a broker's commission is that he or she produce a buyer who is ready, willing and able to purchase the property upon terms prescribed by the sellers. In fact, Claire claims to have produced Peterson, Carpenter, and Spratling who ended up being buyers in the complex sale of the ranch.

The district court found that Claire's conduct with Spratling was "merely trifling." The district court cited the remoteness in time of Claire's contact with Spratling and her failure to produce an acceptable offer. Despite the district court's interpretation of the facts, Claire has provided evidence that "but for" her involvement with Peterson, Spratling, and Carpenter, the sale may not have occurred. Whether the events were too remote so that Claire's involvement was not a proximate cause of the sale necessarily involves questions of fact.

▬▬▬

Whether the broker first approaches, or brings to the attention of the buyer that the property is for sale, or brings the buyer into the picture, has considerable weight in determining whether the buyer is the procuring cause of the sale. Frederick May & Company v. Dunn, 368 P.2d 266, 269 (Utah 1962). The Morrows expended efforts in negotiating a deal with Spratling, Peterson, and Carpenter during the time frame of Spring 1979 to Spring 1981. Fay Barger admitted the actual sale began in 1980.

The question of "whether the deal which the Morrows worked on with Peterson, Spratling, and Carpenter was abandoned" or "whether the continuity of the chain of events which the Morrows set in motion was broken" presents an issue of material fact to be decided by the trier of fact. *See Wilson,* 171 P.2d at 649. Since Claire Morrow has presented facts upon which a trier of fact could find that she was the procuring cause, an issue of material fact exists for trial. Oak Grove Investor v. Bell & Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983).

Claire Morrow's claim that the district court erred in granting John Carpenter's motion for summary judgment was improperly preserved for appeal. *See* NRAP 3(d) and 31(b). ˙

The district court's order granting the Bargers' motion for summary judgment is reversed.