DAVID ATWELL, DBA RESORT PROPERTIES OF AMERICA, APPELLANT, v. SOUTHWEST SECURITIES, A NEVADA LIMITED PARTNERSHIP; GERALD A. MASON, GENERAL PARTNER; EILEEN McNAMEE, TRUSTEE OF THE CAROL McNAMEE TRUST AGREEMENT DATED 10/21/81, GENERAL PARTNER; THOMAS N. WIESNER, GENERAL PARTNER, AND Y.P. CHALADA CORPORATION, A NEVADA CORPORATION, RESPONDENTS.

No. 21485

November 13, 1991 820 P.2d 766

*William L. McGimsey,* Las Vegas, for Appellant.

*Netzorg, Raleigh & Hunt,* Las Vegas, for Respondents.

---

[10]The Honorable Stephen L. Huffaker, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE CHARLES E. SPRINGER, Justice. Nev. Const. art. VI, § 4.

## OPINION

*Per Curiam:*

Appellant David Atwell (Atwell), a real estate broker, alleges that as a result of his efforts, respondent Southwest Securities (Southwest) contracted to sell the Marina Hotel and Casino in Las Vegas, Nevada (Marina) to MGM Grand (MGM). Although

Atwell had neither a written employment contract nor an exclusive listing agreement with Southwest, he claims he is entitled to a commission from the sale based on the theory of quantum meruit. Atwell's claim is based upon an alleged verbal agreement between himself and Tom Wiesner, managing partner of Southwest, providing that Atwell would receive a one and one-half percent commission if able to procure a buyer for the Marina.

Atwell maintains that he conceived of selling the Marina, in conjunction with the adjacent Tropicana Golf Course, to MGM Grand as a package deal. To support his contention, he offered two letters he wrote to Tom Wiesner of Southwest dated February 4, 1987 and June 14, 1988. The first letter states:

> Pursuant to our last talk and agreement, I will very discreetly offer the Marina Hotel along with the Golf Course package, with the understanding that if I'm successful in procuring a qualified purchaser leading to a [sic] acceptable actual transaction I will earn a minimum 1½% fee at close through Escrow.
>
> This offering will be very confidential, as we discussed and I will keep you apprised of any new progress.

The second letter states that Atwell proposed the package deal to Benninger. Atwell also offered a fact sheet provided to him by Southwest concerning the Marina Hotel. As additional support for his claim, Atwell submitted three letters from himself to Fred Benninger, President of the Tracinda Corporation, an affiliate of MGM Grand, stating that Atwell is the authorized agent for the Tropicana Golf Course and suggesting that Benninger purchase both the golf course and the Marina. These communications transpired in 1986 and 1987.

The Marina and the Tropicana Golf Course were eventually sold to MGM Grand as a package deal in 1989. Atwell did not participate in the negotiations leading to the sale.

Atwell filed his complaint claiming a sales commission based on an alleged verbal contract and on the theory of quantum meruit. Before answering the complaint, Southwest filed a motion for summary judgment asserting that Atwell had no employment contract with Southwest and that he was not the procuring cause of any sale. Wiesner's affidavit in support of Southwest's motion for summary judgment denies that there was any written contract of employment with Atwell. However, his affidavit does not deny that Southwest had an oral agreement with Atwell, one of the claims upon which Atwell requested relief. In opposition, Atwell reasserted his claim that he had an oral contract with Southwest, cited the above-mentioned correspondence, and requested additional time to conduct discovery in the case.

The district court granted Southwest's motion for summary judgment. The court held that to recover a commission, Atwell would have to be found (1) to have had an employment contract with Southwest, and (2) to have been the procuring cause of the sale. The district court found that Atwell was not the procuring cause of the sale, based upon the facts before the court.

An award of summary judgment is appropriate only if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. On appeal, all evidence favorable to the appellant must be accepted as true. Morrow v. Barger, 103 Nev. 247, 250, 737 P.2d 1153, 1154 (1987). Thus, all factual allegations under dispute must be interpreted in favor of Atwell.

To be entitled to a commission from the sale of real estate, a broker must show that; (1) an employment contract existed, and (2) the broker was the procuring cause of the sale. Shell Oil Co. v. Ed Hoppe Realty Inc., 91 Nev. 576, 580, 540 P.2d 107, 109-10 (1975). We find that these requirements would be met if Atwell's allegations prove to be true.

The requirement that an employment contract be found to exist is easily met. In *Morrow,* 103 Nev. at 252, 737 P.2d at 1156, this court held that "[a] promise to pay the reasonable value of services may be implied, and a real estate agent may recover under the theory of *quantum meruit,* . . . ." Implied employment contracts between sellers and brokers have been found to exist with only moderate factual support. For example, in *Shell Oil,* 91 Nev. at 580-81, 540 P.2d at 109-10, this court held that an employment contract could be found to exist where the only evidence of a contract consisted of letters sent by the broker to the seller and price information received in return.[1] The court noted that the seller was aware of common real estate practice and knew that the broker expected to be paid, and that the seller continued to permit the broker to act on the seller's behalf, in reliance detrimental to his own interest. *Id.* at 579, 540 P.2d at 108-09.

---

[1]The dissent in Shell Oil Co. v. Ed Hoppe Realty Inc., 91 Nev. 576, 581-82, 540 P.2d 107, 110 (1975) (BATJER, J., concurring in part and dissenting in part), noted that there had been only one "about five minute" conversation between the broker and a representative of the seller, whose recommendation would have to be approved by higher authority, and that it was not contested that there had been any conversations or negotiations between the broker and the seller apart from one unanswered letter.

The facts of the instant case, construed in favor of Atwell, are similar to those of *Shell Oil*. Atwell sent several unanswered letters to Southwest and received price information in return. Although there is no detrimental reliance evidenced by the known facts of this case, aside from the time and effort Atwell may have spent that might otherwise have been spent on other pursuits, it is possible that Atwell's efforts matched those of the broker in *Shell Oil*.

Southwest cites Bangle v. Holland Realty Inv. Co., 80 Nev. 331, 393 P.2d 138 (1964), for the proposition that quantum meruit relief is unavailable to Atwell in the instant case because there was in fact an invalid exclusive listing agreement.[2] However, this is an inaccurate reading of *Bangle*. The court in *Bangle* held that recovery of a commission was barred not by the mere existence of an invalid listing agreement, but rather by the invalidity of such an agreement when the agreement is the *only* basis for finding a contract. *Id.* at 333, 393 P.2d at 139. In *Bangle,* upon considering the record and the amount of relief granted by the district court, this court found that in awarding damages, the district court had relied only upon the theory that an exclusive listing agreement existed, without considering whether an oral contract might exist. *Id.* Because the judgment was based solely upon an express agreement which was found to be invalid, relief under the alternate theory of quantum meruit was denied. *Id.* at 336, 393 P.2d at 141. In the instant case, Atwell does not claim that an exclusive listing agreement existed but rather that there was an oral contract. Therefore, the mere fact that Atwell had at one time endeavored unsuccessfully to procure an exclusive listing agreement does not preclude relief under *Bangle*. Additionally, this was not an invalid written contract as Southwest claims, but rather no written contract at all since both parties did not execute it.

Finally, Southwest maintains that any verbal contract between Southwest and Atwell would be void for indefinite duration under Nevada's statute of frauds, which applies to "[e]very agreement that, by the terms, is not to be performed within 1 year from the making thereof." NRS 111.220(1). If an oral agreement is found to exist in this case, there is nothing to indicate it could not be performed within one year. Thus, any verbal agreement found to

---

[2]In 1986, Atwell sent Wiesner a proposed exclusive listing agreement, which Wiesner never signed. Atwell is not contending that he had an exclusive listing agreement with Southwest.

exist in the instant case may not be precluded by the statute of frauds.

■■■■■■■

To be entitled to a broker's commission, Atwell must also show that he was the procuring cause of the sale. *Shell Oil,* 91 Nev. at 580, 540 P.2d at 109-10. Whether a broker's efforts constitute the "procuring cause" of a sale is a question of fact. Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 9, 409 P.2d 627, 629 (1966) (procuring cause is impossible to measure quantitatively). Thus, this issue is not generally appropriate for summary judgment.

Certain guidelines have been developed to aid in determining whether a broker's efforts are sufficient to support a finding that the broker was the procuring cause. For example, procuring cause requires "conduct that is more than merely trifling." *Id.* at 9, 409 P.2d at 629 (quoting Williams v. Walker, 95 N.H. 231, 61 A.2d 522 (1948)). In situations not involving exclusive listing agreements, merely introducing the eventual purchaser is insufficient. *Bartsas,* 82 Nev. at 9, 409 P.2d at 629. However, "[w]hether the broker first approaches, or brings to the attention of the buyer that the property is for sale, or brings the buyer into the picture, has considerable weight in determining whether the [broker] is the procuring cause of the sale." *Morrow,* 103 Nev. at 254, 737 P.2d at 1157.

■■■■■■■

Where the broker does introduce the eventual purchaser, the burden switches to the seller to show that the broker subsequently abandoned efforts or that the broker's efforts were ineffectual. *Bartsas,* 82 Nev. at 9, 409 P.2d at 630. Where there was an agreement to pay a commission and the broker was the introducing party, he must also be given the opportunity to consummate the sale. *Id.* at 10, 409 P.2d at 630. A broker may be deemed to be the procuring cause, even in cases in which the transaction was actually closed by the owner directly and for a different price than the broker's asking price, and in cases in which there was no suggestion of fraud. Humphrey v. Knobel, 78 Nev. 137, 142, 369 P.2d 872, 874 (1962).

Southwest cites the recent case of Binder v. Levy Realty Company, 106 Nev. 221, 222-24, 790 P.2d 497, 499-50 (1990), as authority for what constitutes procuring cause under the current state of the law. In *Binder,* this court reversed the district court's conclusion that evidence to support the procuring cause determination existed. However, the facts of *Binder* are different from the facts in the instant case. In *Binder,* the broker never met

or spoke with the buyers before the sale, and the broker did nothing more than introduce the sellers to the eventual buyers. Atwell personally spoke and wrote to the seller, communicated with the buyer, and alleges that he provided more than a mere introduction.

The parties are not asking this court to determine, based upon the allegations, whether Atwell was the procuring cause of the sale. Rather, the issue is whether questions of fact exist which would preclude summary judgment. It is clear from the evidence presented that Atwell alleges an oral contract with Southwest and has had some contact with Southwest and MGM Grand concerning the land in question. Because the issue of whether a broker was the procuring cause is essentially a factual one, we hold that the district court's award of summary judgment at such an early stage in the litigation was error. *Cf.* Sawyer v. Sugarless Shops, 106 Nev. 265, 792 P.2d 14 (1990) (granting summary judgment was improper when there were conflicting affidavits, some doubt of operative facts, and no discovery had yet been conducted).

The factual issues presented make the district court's award of summary judgment improper. Accordingly, we reverse and remand.

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

It is tempting to join in the majority's decision. After all, reversing the district court's award of summary judgment does not mean that Atwell's claim carries the day. Rather, the majority opinion only ensures that Atwell shall have his day in court.

Nevertheless, I feel compelled to dissent. Though a trial court should exercise great care in granting a motion for summary judgment, it should not postpone judgment for the defendant (or plaintiff for that matter) where the ultimate legal result is clearly mandated. Even a groundless suit costs money to defend, and the cost rises dramatically and senselessly if allowed to proceed to trial. Moreover, farcical trials of this sort inexcusably consume great amounts of scarce judicial resources—resources ultimately paid for out of the taxpayers' pockets.

Atwell alleges that a verbal contract existed between himself and respondent with respect to the sale of the Marina Hotel. In support of this allegation, he offers several letters that he wrote to the parties to the transaction. In response to these letters, however, Atwell received only a fact sheet containing price information for the property in question. Respondent sent similar fact sheets to hundreds of others who inquired about the possible sale

of the Marina Hotel. If Atwell's scant evidence raises a genuine issue of material fact, then these hundreds of others have equally plausible causes of action.

Though the pleadings and proof offered below must be reviewed in a light most favorable to Atwell, Morrow v. Barger, 103 Nev. 247, 737 P.2d 1153 (1987), he "'is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture.'" Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (quoting Hahn v. Sargent, 523 F.2d 461, 467 (1st Cir. 1975), *cert. denied,* 425 U.S. 904 (1976)). Atwell's claim is groundless. The district court appropriately ordered summary judgment for the respondent.