FOCUS COMMERCIAL GROUP, INC., a Nevada Corpo-
ration, Appellant, *v.* STEVE REBEIL, Individually,
and as Agent for Gem Homes, Inc., a Nevada Cor-
poration, Respondent.

No. 28800

April 9, 1998                                    956 P.2d 123

*John Peter Lee, Paul C. Ray,* and *Barney Ales,* Las Vegas, for
Appellant.

*Nicholas J. Santoro, a Professional Corporation,* and *Tracey
L. Heinhold,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

This is an appeal from a grant of summary judgment in a breach of contract action involving a real estate commission. On April 8, 1993, Steve Rebeil, president of Gem Homes, Inc., entered into an exclusive listing agreement with Focus Commercial Group, Inc., whereby Rebeil granted Focus an irrevocable right to sell and market eighty acres of real estate known as Hollywood Hills until July 8, 1993. In January 1994, approximately six months after the agreement between Focus and Gem Homes had allegedly expired, Rebeil entered into an agreement with a Las Vegas builder for the sale of Hollywood Hills.

Shortly thereafter, Focus initiated this lawsuit, claiming that Rebeil had secretly attempted to solicit other sales agreements during the exclusive listing period in violation of the exclusive listing agreement. Additionally, Focus claimed that pursuant to an oral open listing agreement with Rebeil, Focus was the procuring cause of sales agreements that Gem Homes eventually entered into and, as such, Focus was entitled to its six percent commission.

The district court granted Rebeil's motion for summary judgment by concluding as a matter of law that the agreement invalid because it did not contain a definite termination date as required by NRS 645.320. Focus now appeals the district court's grant of summary judgment to Rebeil and Gem Homes.

## FACTS

On April 6, 1993, Gem Homes was the successful bidder for approximately eighty acres of real estate located near the intersection of Alto and Hollywood streets in the northeast submarket of Las Vegas. On April 8, 1993, Gem Homes entered into an exclusive listing agreement with Focus' agent Brian Lee, whereby Focus was given the authority to market and solicit buyers for the property, which was known as Hollywood Hills. The agreement, a standard form exclusive listing agreement commonly used in the commercial real estate industry, provided:

> 1. For and in consideration of the services to be performed by Focus Commercial Group, Inc., herein referred to as "Broker," Steve Rebeil, herein referred to as "Rebeil," hereby grants Broker the exclusive right to sell . . . the property situated within the County of Clark, State of Nevada . . . commonly known as the 80 acre NWC of Alto

and Hollywood, effective April 8th, 1993. . . . . This employment and authority to sell shall be irrevocable until 12:00 Midnight on July 8, 1993.

2. Rebeil hereby agrees to pay Broker six percent (6%) of the total purchase price as a fee for professional services rendered, which fee shall be payable upon close of escrow from proceeds, if a buyer is secured by Broker, his agent, broker and agents with whom Broker will cooperate, or through any other source including Rebeil, during the period of this Agreement, or during the subsequent ninety (90) days, to persons with whom Broker has negotiated during this Agreement, or offered or presented Rebeil's property, or who has inspected subject property during the term of the listing, provided the Broker submits a list of said persons to Rebeil within ten (10) days of the expiration of the term of this Agreement . . . .

According to Lee's affidavit, after entering into the exclusive listing agreement, Lee distributed marketing packages to many of the major home builders in the Las Vegas valley in an effort to promote the Hollywood Hills project. After distributing these packages, Lee or Andrew Flaherty, Focus' co-owner and its corporate secretary, initiated personal follow-up sales contacts with many of the home builders in order to provide additional marketing information. Two of the builders with whom Lee met to discuss the Hollywood Hills project were Plaster Development and Longford Homes of Nevada (Longford Homes).

In his affidavit, Lee stated that in a telephone conversation which took place prior to July 8, 1993, Rebeil and Lee entered into an oral agreement whereby Rebeil agreed to allow Lee and Focus to continue their marketing efforts of the Hollywood Hills project after the July 8, 1993, expiration of the exclusive listing agreement. During this telephone conversation, Lee stated that while the parties did not discuss whether the oral agreement was exclusive or non-exclusive, it was his understanding that Focus retained the right to market the property with potential buyers, and that if Lee brought any offers that were accepted by Rebeil, Focus would be entitled to its six percent commission.

Focus brought a letter of intent from B.R. Homes for the purchase of Hollywood Hills during the agreement's exclusivity period; however, Rebeil rejected this offer. On August 11, 1993, during the subsequent ninety-day window provided in Paragraph Two of the agreement, Rebeil entered into a sales agreement with Watt Homes, Nevada, for the purchase of Hollywood Hills.[1] Lee

---

[1]While not evident from the record, this transaction apparently never materialized as evidenced by the fact that Gem Homes sold one half of Hollywood Hills to Plaster Development in January 1994 and the remaining half to Longford Homes in July 1994.

stated in his affidavit that Rebeil verbally entered into the agreement with Watt Homes prior to July 8, 1993, in violation of the agreement. In spite of the fact that Lee and Focus had previously attempted to market Hollywood Hills to Watt Homes, Rebeil allegedly excluded Focus from final negotiations concerning the Gem Homes—Watt Homes transaction.

Unaware of the transaction between Gem Homes and Watt Homes, Lee continued to market Hollywood Hills throughout the fall of 1993. Because portions of Hollywood Hills had marketing problems due to the presence of a tectonic fault, Lee determined that the best marketing strategy would be to attract a reputable builder for the unaffected western half of the project, thereby increasing the attractiveness of Hollywood Hill's eastern forty acres.

In November 1993, Lee learned that Plaster Development was interested in developing the western portion of Hollywood Hills that did not have the fault problem. According to Lee's affidavit, after discussing his marketing strategy with Rebeil and informing Rebeil of Plaster Development's interest in acquiring the western portion of Hollywood Hills, Rebeil approved of the proposed transaction and directed Lee to proceed with sales negotiations with Plaster Development.

In an effort to coordinate the exchange of information, and to facilitate the transaction between Gem Homes and Plaster Development, Lee arranged several meetings between key personnel of the two companies. In one meeting, Greg Anderson, Rebeil's contracted engineer, provided Plaster Development personnel with cost estimations for sewer, water, and electric utilities necessary for lot improvements. In his deposition, Anderson stated that Lee played a critical role in the proposed transaction by serving as a liaison between Plaster Development and Gem Homes.

In addition to arranging meetings between Rebeil's engineer and key personnel from Plaster Development, Lee also arranged for a meeting between Rebeil and Richard Plaster, Plaster Development's principal, which took place on January 17, 1994. According to Lee, throughout this time period, Rebeil instructed Lee to continue marketing Hollywood Hills to Plaster Development.

On January 21, 1994, Gem Homes and Plaster Development entered into a purchase agreement whereby Plaster agreed to purchase the western forty acres of the Hollywood Hills project. In spite of the work that he had performed, Lee was excluded from these final negotiations. Additionally, after learning of the transaction between Gem Homes and Plaster Development, Flaherty contacted Rebeil by telephone to remind him that Focus

was entitled to a commission based on Lee's work in effectuating the sale.

Bill Laubner, the director of land development for Plaster Development, testified in his deposition that in December 1993 he met with Lee and expressed an interest, on behalf of Plaster Development, in acquiring a portion of Hollywood Hills from Gem Homes. In a subsequent deposition, Laubner testified that in his estimation, Lee was the procuring cause broker of the Gem Homes—Plaster Development transaction because of the significant amount of work that Lee performed in effectuating the sale.

Rebeil's version of the events surrounding the Gem Homes—Plaster Development transaction varies considerably from that of Lee's and Flaherty's. Rebeil stated in his affidavit that after Gem Homes became the successful bidder for Hollywood Hills, Gem Homes retained the services of Focus for a period of ninety-days pursuant to an exclusive listing agreement dated April 8, 1993. Rebeil further stated that after the term expired on July 8, 1993, Gem Homes decided to retain Hollywood Hills and develop the site itself because Focus had failed in its attempts to procure a buyer for the project.

According to Rebeil, in January 1994, he was approached by real estate agent William Gayler, who inquired as to whether Hollywood Hills was available for sale. After being told that Gem Homes would be interested in selling Hollywood Hills, Gayler allegedly made a market presentation to Laubner of Plaster Development. During this presentation, Laubner allegedly told Gayler that Plaster Development would be interested in acquiring the western half of Hollywood Hills and, as a result of Gayler's presentation, Gem Homes entered into a sales agreement with Plaster Development for the sale of one-half of Hollywood Hills for $8,000.00 per tentative mapped lot. Rebeil stated that the remaining one-half parcel of Hollywood Hills was sold to Longford Homes in May 1994, due to the efforts of broker Daniel Kramer, of Landcor Properties & Investments, Inc.

After both Gayler and Kramer were paid their respective commissions, Rebeil stated that Lee advised both Gem Homes and Plaster Development that he was entitled to a commission because of his work in effectuating the sale of Hollywood Hills. Rebeil stated that he denied Lee's request because he felt Lee had nothing to do with the sale, and because in his estimation Gayler and Kramer were the procuring cause brokers of the Gem Homes—Plaster Development transaction.

On August 3, 1994, Focus filed its complaint alleging that it had fulfilled the terms of the agreement through its procurement of willing buyers who eventually purchased Hollywood Hills for $3,736,000.00. Accordingly, Focus alleged that it was entitled to

a commission in the amount of $224,160.00. After Gem Homes failed to timely answer Focus' complaint, a default judgment was entered against it on September 29, 1994. By court order dated October 26, 1994, the default judgment on behalf of Focus was set aside based on a showing of good cause by Rebeil and Gem Homes.

In spite of Rebeil's previous sworn statements wherein he indicated that the agreement had expired by its own terms on July 8, 1993, Rebeil argued that the agreement between Gem Homes and Focus was invalid because it did not contain a definite termination date as required by NRS 645.320. Additionally, Rebeil denied the existence of an oral agreement. The district court granted Rebeil's motion for summary judgment as to all claims on the sole basis that the agreement was invalid as a matter of law because it did not contain a definite termination date as required by NRS 645.320.[2] Focus now appeals the district court's order granting Rebeil's motion for summary judgment.

## DISCUSSION

*The district court erred in concluding that the agreement was invalid due to the absence of a definite termination date*

Focus argues that the agreement satisfies the requirements of NRS 645.320 because it provides for a termination date of July 8, 1993, as evidenced by key language contained in the agreement's first two paragraphs. We agree.

The last sentence of the first paragraph states "[t]his employment and authority to sell shall be irrevocable until 12:00 Midnight on July 8, 1993." In the agreement's second paragraph, Rebeil agrees to pay Focus a six percent commission if a buyer is secured by Focus "during the period of this Agreement, or during the subsequent ninety (90) days." Focus argues that by reading the two paragraphs in conjunction with one another, it is evident that the agreement expired on July 8, 1993, and that it

---

[2]NRS 645.320 requires that:

> Every brokerage agreement which includes a provision for an exclusive listing must:
> 1. Be in writing.
> 2. Have set forth in its terms a definite, specified and complete termination.
> 3. Contain no provision which requires the client who signs the brokerage agreement to notify the real estate broker of his intention to cancel the exclusive features of that listing after the termination of the listing.
> 4. Be signed by both the client or his authorized representation and the listing agent or his authorized representative in order to be enforceable.

also provided for an additional ninety-day period following July 8, 1993, during which time the broker could receive a commission.

In response, Rebeil argues that the agreement is invalid pursuant to our holding in Bangle v. Holland Realty Inv. Co., 80 Nev. 331, 393 P.2d 138 (1964). In *Bangle,* the buyer purchased land known as Sunset Manor upon which Bangle had built ninety-seven subdivision homes. *Id.* at 332, 393 P.2d at 138. Holland, a real estate broker, entered into an exclusive listing agreement with Bangle which provided Holland with an " 'exclusive right to sell any houses which [Bangle] may build or cause to have built on property tentatively known as Sunset Manor in West Las Vegas, Nevada, for a minimum commission of $400 a house.' " *Id.* at 332, 393 P.2d at 139. Of the ninety-seven homes that were eventually sold in Sunset Manor, it was stipulated that Holland was directly responsible for the sale of twenty-eight. *Id.* at 333, 393 P.2d at 139.

At the conclusion of trial, the jury awarded Holland $38,800 based solely on the express language of the exclusive listing agreement. *Id.* On appeal, we reversed the jury's award by concluding that the exclusive listing agreement was invalid because it lacked a definite termination date as required by NRS 645.320. *Id.* at 334-35, 393 P.2d at 141.

Respondent's reliance on *Bangle* is misplaced. Based on a plain reading of the agreement, we conclude that the agreement was valid because it sufficiently provided for an expiration date of July 8, 1993. Unlike the agreement in *Bangle,* which failed for want of any guideline as to duration, here, by reading the first and second paragraphs in conjunction with one another, it is clear that the agreement provided for a termination date of July 8, 1993. Accordingly, we conclude that the district court erred in holding as a matter of law that the agreement was invalid because it lacked a definite termination date as required by NRS 645.320.

*The district court erred in granting respondent's motion for summary judgment*

Focus argues that the district court erred in granting Rebeil's motion for summary judgment because genuine issues of material fact were in dispute concerning the nature and meaning of their written agreement, the existence, nature and effect of their subsequent oral agreement, and whether Lee was the procuring cause of the transaction between Gem Homes and Plaster Development. We agree.

NRCP Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-

rogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the non-moving party, there remain no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. All of the non-movant's statements must be accepted as true, and a district court may not pass on the credibility of affidavits. This court's review of an order granting summary judgment is *de novo*.

Jones v. First Mortgage Co. of Nevada, 112 Nev. 531, 534, 915 P.2d 883, 885 (1996) (citations omitted).

Focus argues that Lee and Rebeil entered into a separate, oral open listing agreement prior to the expiration of their written agreement on July 8, 1993. After the expiration of the exclusive listing agreement, Focus argues that it continued to market Hollywood Hills on an open listing basis pursuant to Rebeil's instructions. Rebeil denies entering into a separate oral agreement with Lee.

In Morrow v. Barger, 103 Nev. 247, 249, 737 P.2d 1153, 1154 (1987), Morrow, a licensed real estate broker, entered into a written listing agreement in March 1979 with the Bargers for the sale of the Bargers' Nevada ranch. Pursuant to this agreement, Morrow registered Peterson, Carpenter, and Spratling as buyers with the Bargers. *Id.*

In December 1980, Morrow and the Bargers entered into another listing agreement which expired by its terms on April 15, 1981. *Id.* When this listing agreement expired, Morrow claimed that she and the Bargers orally agreed that she would continue to pursue the sale of the ranch, with the Bargers assuring her that her " 'interest would be protected.' " *Id.* at 252, 737 P.2d at 1156. In March, 1982, the Bargers sold their ranch in a complex transaction that, at various stages, involved Peterson, Carpenter, and Spratling. *Id.* at 250, 737 P.2d at 1154. Morrow then filed a complaint against the Bargers for her real estate commission, arguing that the Bargers excluded her from final negotiations and that she was the procuring cause of the sale of the Bargers' ranch. *Id.* at 249-50, 737 P.2d at 1154.

The district court granted the Bargers' motion for summary judgment after concluding that the 1979 listing agreement did not create a valid exclusive listing agreement pursuant to NRS 645.320 because it lacked a definite termination date. *Id.* at 250, 737 P.2d at 1155. Additionally, the district court concluded that

no employment relationship was created by the alleged oral agreement between the Bargers and Morrow. *Id.* at 251, 737 P.2d at 1155-56. On appeal, we reversed the district court's grant of summary judgment by holding that the significance of the alleged oral agreement upon the 1979 listing agreement was a material question of fact which precluded summary judgment. *Id.* at 251, 737 P.2d at 1155.

Here, we conclude that based on the affidavits of Lee and Flaherty, material questions of fact existed concerning whether Lee and Rebeil entered into an oral open listing agreement, and whether such agreement was in existence at the time of the Gem Homes—Plaster Development transaction in January 1994. In light of our holding in *Morrow,* and in construing the facts in favor of Focus, we conclude that the existence and terms of the alleged oral agreement between Rebeil and Focus present material questions of fact which render summary judgment inappropriate.

Focus further argues that its agent, Lee, was the procuring cause of the transaction between Gem Homes and Plaster Development and thus it is entitled to a commission based on the alleged oral agreement. In support of this argument, Focus relies on the testimony of Anderson, Rebeil's contracted engineer, and Laubner, Plaster Development's director of land development.

In his deposition taken on April 13, 1995, Anderson stated that Lee was an important liaison between Plaster Development and Gem Homes during sales negotiations for Hollywood Hills. Additionally, in his deposition taken on March 4, 1996, Laubner testified that in negotiations for Hollywood Hills during January 1994, it was his understanding that Lee was representing Rebeil and Gem Homes. Laubner added that in his estimation, Lee was instrumental in effectuating Gem Homes' sale of Hollywood Hills to Plaster Development.

In Atwell v. Southwest Securities, 107 Nev. 820, 823, 820 P.2d 766, 767 (1991), we reiterated that in order to be entitled to a real estate commission, a broker must show that "(1) an employment contract existed, and (2) the broker was the procuring cause of the sale." *Id.* With respect to the second prong of this test, we concluded that "[w]hether a broker's efforts constitute the 'procuring cause' of a sale is a question of fact." *Id.* at 825, 820 P.2d at 769. Because whether a broker was the procuring cause of a sale presented material questions of fact, we concluded that the district court erred in granting Southwest's motion for summary judgment. *Id.* at 826, 820 P.2d at 770.

Here, as in *Atwell,* we conclude that the issue as to whether

Focus' agent, Lee, was the procuring cause of the Gem Homes—Plaster Development transaction raises genuine issues of material fact. Accordingly, the district court erred in granting Rebeil's motion for summary judgment.

## CONCLUSION

We conclude that the exclusive listing agreement adequately satisfied the definite termination requirement contained in NRS 645.320 and was therefore valid. Further, we conclude that genuine issues of material fact exist concerning the nature and terms of the alleged oral agreement and whether Focus was the procuring cause of the Gem Homes—Plaster Development transaction. Accordingly, we reverse the district court's order granting respondent's motion for summary judgment and remand this case for trial.